**James F. STACKHOUSE Administrator of the Estate of Karen Sue Stackhouse, Deceased, and James F. Stackhouse, Individually, Appellants–Plaintiffs,**

v.

**John C. SCANLON, M.D., David R. Emery, M.D., Ronald T. Rolley, M.D., Richard Bloch, M.D., Arnett Clinic, Inc., and St. Elizabeth Hospital, Appellees–Defendants.**

No. 79A04–9011–CV–537.

Court of Appeals of Indiana,
Fourth District.

Aug. 21, 1991.

Thomas W. Munger, Lafayette, for appellants-plaintiffs.

Larry R. Fisher, Deborah B. Noah, Stuart & Branigin, Lafayette, for appellees-defendants.

CHEZEM, Judge.

### Case Summary

Plaintiffs–Appellants, James F. Stackhouse, Administrator of the Estate of Karen Sue Stackhouse, and James F. Stackhouse, Individually (collectively, "Plaintiff"), appeal from the summary judgment entered for Defendants–Appellees, John C. Scanlon, M.D., David R. Emery, M.D., and Arnett Clinic, Inc. We affirm.

### Issues

Plaintiff presents three (3) issues for our review, which, after oral argument, we consolidate and restate as follows:

I. Did the trial court abuse its discretion in finding that a chiropractor "is not qualified to testify regarding the standard of care rendered in this case by board certified physicians specializing in internal medicine and pulmonary disease."

II. By failing to object in the trial court, have certain alleged procedural errors been waived by Plaintiff.

### Facts and Procedural History

On February 11, 1985, Karen Sue Stackhouse complained of pain in her right leg, and was taken to Arnett Clinic. She was then admitted to the Intensive Care Unit at St. Elizabeth Medical Center under the care of Dr. Scanlon. After an examination, Dr. Scanlon suspected that Karen was suffering from a major pulmonary embolism; he prescribed Heparin (a blood anticoagulant).

Karen was later diagnosed with septic shock syndrome.

Thereafter, Dr. Emery sought to monitor Karen's blood flow by inserting a Swan–Ganz catheter. He did not use "fluoroscopy" to guide the insertion, and a large vein was perforated. Karen died several hours later on February 12, 1985.

Thereafter, a Medical Review Panel was appointed to review the case. On October 31, 1989, the Panel rendered its decision, finding in favor of all Defendants. However, as to Dr. Scanlon, it concluded he had breached the applicable standard of care, but it "was *not* a factor of the resultant damages."

On January 25, 1990, Plaintiff filed his Complaint, which "[sought] recovery for medical malpractice resulting in the death of plaintiff's decedent." Defendants then filed their Motion for Summary Judgment on February 14, 1990. The following day they filed the Affidavit of Dianna Pitcher, the Manager of the Medical Malpractice Division of the Department of Insurance. Ms. Pitcher stated therein that she has custody of the records, including the Opinion issued by the Medical Review Panel. She also stated that the copy of the Opinion attached to her Affidavit was "a true and complete copy." Defendants argued that Plaintiff could not state a *prima facie* case of medical malpractice without competent and admissible expert testimony establishing that they had breached the applicable standard of care. Before the hearing on summary judgment, Plaintiff dismissed from the case Dr. Rolley, Dr. Bloch and St. Elizabeth Hospital Medical Center, leaving in the lawsuit Dr. Scanlon, Dr. Emery, and Arnett Clinic.

In his answers to Interrogatories, Plaintiff admitted he did not yet have an expert to establish the requisite standard of care, or that it was breached. In an attempt to establish such, and thereby defeat the summary judgment motion, Plaintiff later filed the affidavit of a chiropractor, Lon Kaminsky, on May 4, 1990.

On May 7, 1990, the trial court held a summary judgment hearing, and then took the matter under advisement. The court then allowed the parties to file supplemental briefs. With leave of court, Defendants also filed the Affidavit of Peggy Reen, and the Affidavit of Carol Lulinski. These affidavits attacked Dr. Kaminsky's credibility. On June 12, 1990, Plaintiff requested oral argument on the supplemental briefs. He also filed another Affidavit of Dr. Kaminsky. The request for oral argument was denied, and summary judgment was entered in favor of Defendants on July 13, 1990. In its summary judgment entry, the trial court stated as follows:

> The Court, having taken Defendants Scanlon, Emery and Arnett Clinic's Motion for Summary Judgment under advisement, now finds that Kaninsky [sic], as a practitioner of chiropractic, is not qualified to testify regarding the standard of care rendered in this case by board certified physicians specializing in internal medicine and pulmonary disease; that there is, therefore, no admissible expert testimony in this case regarding the standard of care and proximate causation to allow this lawsuit to go forward; that there are no genuine issues of material fact involved in this cause and that Defendants are entitled to the entry of summary judgment as a matter of law.

### Discussion and Decision

#### I

This is an appeal from an entry of summary judgment, and our standard of review in such cases is well-established. When reviewing a summary judgment, the standard on review is the same as it was for the trial court: whether there was no genuine issue of material fact and whether the moving party was entitled to judgment as a matter of law. *Rogers v. Lewton* (1991), Ind.App., 570 N.E.2d 133, 134. Therefore, we stand in the position of the trial court and consider the same matters. *Campbell v. Porter County Board of Commissioners* (1991), Ind.App., 565 N.E.2d 1164, 1166. In ruling upon a summary judgment motion, the trial court may consider the pleadings, affidavits, depositions, admissions, interrogatories and testimony. *Four Winns,*

*Inc. v. Cincinnati Insurance Co., Inc.* (1984), Ind.App., 471 N.E.2d 1187, 1188, *reh. denied, trans. denied.* Indeed, facts alleged in a complaint must be taken as true except to the extent that they are negated by depositions, answers to interrogatories, affidavits, and admissions. *Cowe v. Forum Group, Inc.* (1991), Ind., 575 N.E.2d 630. Any doubt as to the existence of a factual issue should be resolved against a moving party, construing all properly asserted facts and reasonable inferences in favor of the nonmovant. *Bridgewater v. Economy Engineering Co.* (1985), Ind., 486 N.E.2d 484, 487, *reh. denied.* Further, the burden of establishing the lack of a material factual issue is on the party moving for summary judgment. *Cowe, supra.* Once the movant has met this burden, an opposing party is obliged to disgorge sufficient evidence to show the existence of a genuine triable issue. *Hinkle v. Niehaus Lumber Co.* (1988), Ind., 525 N.E.2d 1243, 1245.

■ Plaintiff first argues that "the trial court erred in rejecting the expert opinion affidavit of Dr. Lon Kaminsky, a duly qualified and licensed chiropractor." In particular, he argues that a chiropractor is competent and qualified to give an opinion about the standard of care of physicians specializing in internal medicine and pulmonary disease, as well as an opinion on proximate causation. We disagree.

■ Whether a witness is competent to testify as an expert is a matter for determination by the trial court in its discretion. *Travelers Indemnity Co. v. Armstrong* (1982), Ind., 442 N.E.2d 349, 365. We review the trial court's judgment in these matters only for an abuse of discretion. *Hegerfeld v. Hegerfeld* (1990), Ind.App., 555 N.E.2d 853, 855.

To determine whether a witness qualifies as an expert, the following elements must be established: (1) the subject of the opinion or inference must be so distinctly related to some science, profession, business, or occupation as to be beyond the ken of laymen; and (2) the witness must have sufficient skill, knowledge, or experience in that field so as to make it appear that his opinion or inference will aid the trier of fact in his search for the truth. *Matter of Paternity of Gregory* (1984), Ind.App., 469 N.E.2d 480, 481. As we have previously stated:

> There are two requisites for the admission of expert testimony. The subject matter of the testimony must be beyond the understanding of a layman so they cannot assess the evidence presented and draw an informed conclusion. Also, the witness must have sufficient skill and knowledge in the field to aid the trier of fact in its search for the truth.

*Underhill v. Deen* (1982), Ind.App., 442 N.E.2d 1136, 1139.

Here, the first element has been established. The admissible evidence before the trial court included the facts alleged in the Complaint, the answers to Interrogatories, and the Opinion of the Medical Review Panel. This evidence showed that Karen was suffering from septic shock, which is essentially a poisoning of the blood and body by a spreading infection. Upon admittance, she had a fever, poor urinary output, elevated white blood count, and was hypotensive. Dr. Scanlon suspected she was suffering from a major pulmonary embolism, so he prescribed the blood anticoagulant Heparin. She was then treated with antibiotics. The next day she underwent surgery. Dr. Emery inserted a Swan–Ganz catheter into a large vein to monitor her blood flow. During the procedure, the vein was perforated, and there was some internal bleeding. Karen died several hours later on February 12, 1985. In other words, the evidence showed that the medical treatment was technical and complicated, and beyond the common knowledge, understanding, and experience of laymen.

■ Furthermore, the question of whether a physician has exercised the degree of skill and care possessed by other physicians in that locality generally involves questions of science and professional judgment which are outside the realm of laymen. *Dolezal v. Goode* (1982), Ind.App., 433 N.E.2d 828, 831. As we noted in *C.F. Broughton, D.M.D., P.C. v. Riehle* (1987),

Ind.App., 512 N.E.2d 1133, 1137, "[i]n an action for [medical] malpractice, whether the defendant used suitable professional skill must generally be proven by expert testimony, that is, other physicians, surgeons, or orthodontists, as the case may be." *See also, Marquis v. Battersby* (1982), Ind.App., 443 N.E.2d 1202, 1203.

With respect to the second element, the trial court properly determined that the chiropractor did *not* have "sufficient skill, knowledge or experience" in the field of internal medicine and pulmonary disease so that his opinion would be helpful to the trier of fact. The chiropractor's affidavit is both general and conclusory. It does not qualify him as an expert in this case.

■ In addition, we note that chiropractors are generally not qualified to serve as experts in cases involving physicians. They do not have the same education, training or experience, all of which are generally necessary to render an opinion of benefit to a jury. For instance, a comparison of the licensing statutes for chiropractors and physicians shows that the former are given only *limited* licenses, whereas the latter receive *unlimited* licenses as to the entire medical field. *See,* Ind.Code §§ 25–10–1–1 and 25–22.5–1–1.1. In essence, Plaintiff failed to present a sufficient foundation for admitting the expert opinion offered by Dr. Kaminsky. *See also, Wozny v. Godsil* (1985), Ala., 474 So.2d 1078, 1080; *Bethea v. Smith* (1985), 176 Ga.App. 467, 336 S.E.2d 295, 297–298, *cert. denied.*

■ Therefore, because of the absence of expert testimony, the entry of summary judgment was entirely appropriate. *Shoup v. Mladick* (1989), Ind.App., 537 N.E.2d 552, 553, *reh. denied; Ellis v. Smith* (1988), Ind.App., 528 N.E.2d 826, *reh. denied.* Plaintiff has failed to provide any admissible expert opinion contradicting the Medical Review Panel's findings as to the standard of care, any breach of that standard, and proximate causation.[1] There is

no evidence of breach of the appropriate standard by Dr. Emery or Arnett Clinic, and no evidence that the breach by Dr. Scanlon proximately caused Karen's death. Consequently, because there is a complete failure of proof here as to certain essential elements needed for a *prima facie* medical malpractice case, there were no genuine triable issues.

## II

Plaintiff next argues that "[t]he motion for summary judgment was not supported as required by T.R. 56, the memorandum set forth no facts to warrant a summary judgment, and the affidavit of Donna [sic] Pitcher is a nullity because it does not show her status other than by her own declaration so as to make her testimony admissible." In addition, Plaintiff argues that "T.R. 56 does not permit filing supplemental material to support a motion for summary judgment, [that] [i]t must be complete when filed."

■ We first note that these alleged procedural errors have been waived by Plaintiff. There is no indication in the record that he objected in the trial court during the summary judgment proceedings. Moreover, Plaintiff does not argue that he lodged any such objections with the court. As we have noted previously, "a party who neglects to avail himself of a valid objection to a proceeding and stands by or participates therein until an adverse result is reached must bear the consequences." *Wisconics Engineering, Inc. v. Fisher* (1984), Ind.App., 466 N.E.2d 745, 753, *reh. denied, trans. denied.*

■ Furthermore, even if the issues had not been waived, the arguments about them are without merit. First, there is no absolute requirement that a summary judgment motion "be complete when filed." Certainly, the parties may inform the trial court of new cases, arguments, or insights at the summary judgment hearing, which

---

1. Of course, to make a *prima facie* case of medical malpractice, a plaintiff must establish: (1) the standard of care owed; (2) a breach of that standard; and (3) that the plaintiff suffered a compensable injury proximately caused by the defendant's breach of the standard. *Planned Parenthood of Northwest Indiana, Inc. v. Vines* (1989), Ind.App., 543 N.E.2d 654, 660, *trans. denied.*

occurs *after* the filing of the motion. In addition, while Plaintiff has failed to cite us to any trial rule or case law which supports his contention in this regard, we note that there is a time requirement for filing affidavits which support motions set forth in T.R. 6(D), as follows:

> **(D) For Motions—Affidavits.** A written motion, other than one which may be heard ex parte, and notice of the hearing thereof shall be served not less than five (5) days before the time specified for the hearing, unless a different period is fixed by these rules or by order of the court. Such an order may, for cause shown, be made on ex parte application. *When a motion is supported by affidavit, the affidavit shall be served with the motion;* and, except as otherwise provided in Rule 59(D), opposing affidavits may be served not less than one (1) day before the hearing, unless the court permits them to be served at some other time. [Emphasis supplied.]

However, we have held that a trial court may, in its discretion, accept affidavits submitted after the motion is filed. *Wisconics*, 466 N.E.2d at 752–753.

■  With respect to the claim that the summary judgment motion was not supported, once again we disagree with Plaintiff. There was sufficient evidence before the trial court, including the facts alleged in the Complaint, the answers to Interrogatories, and the Opinion of the Medical Review Panel. While it is true that unsworn statements and uncertified exhibits do not qualify for consideration in ruling upon a motion for summary judgment, *Holloway v. Giganti, Inc.* (1989), Ind.App., 540 N.E.2d 97, 98, *reh. denied,* the Opinion of the Medical Review Panel was properly certified by the Affidavit of Dianna Pitcher. In her affidavit, Ms. Pitcher states she is the Manager of the Medical Malpractice Division for the Department of Insurance, and she is "responsible for the care, control and custody of the records of the Department of Insurance." She also states that she has examined the records in this case, and has attached to her affidavit "a true and complete copy of the Medical Review Panel Opinion."

Affirmed.

MILLER and SHIELDS, JJ., concur.