Cheryl LONG, Personal Representative of the Estate of Alma M. Furr, Deceased and Cash Furr, Individually, Appellant–Plaintiff,

v.

METHODIST HOSPITAL OF INDIANA, INC., Appellee–Defendant.

No. 54A05–9704–CV–143.

Court of Appeals of Indiana.

Sept. 29, 1998.

James E. Ayers, Wernle Ristine & Ayers, Crawfordsville, for Appellant–Plaintiff.

Douglas J. Hill, Alan J. Irvin, Hill Fulwider McDowell Funk & Matthews, Indianapolis, for Appellee–Defendant.

## OPINION

SHARPNACK, Chief Judge.

Cheryl Long, as personal representative of the estate of Alma M. Furr, and Cash Furr (collectively "Cheryl") appeal a summary judgment granted to The Methodist Hospitals, Inc. ("Methodist"). The Appellants raise two issues which we expand and restate as:

(1) whether the affidavit of Dr. Michael L. Zeckel was admissible;

(2) whether the affidavit of Dr. Michael L. Zeckel was sufficient to demonstrate the absence of a genuine issue of material fact as to causation;

(3) whether the trial court erred in granting Methodist's motion to strike the affidavit of Nurse Parks;

(4) whether there is a genuine issue of material fact as to whether Methodist's alleged negligence increased the risk of harm to Alma under the Restatement (Second) of Torts § 323; and,

(5) whether the trial court erred in granting Methodist's motion for summary judgment.

We affirm.

The facts most favorable to Cheryl follow. In 1989, Alma was admitted to Methodist Hospital and underwent open heart surgery. Her physician had ordered that Alma be given a hibiclens shower prior to surgery. Alma did not receive the shower. After surgery, her physician ordered that Mandol, an antibiotic, be administered to Alma every six hours until Alma had received nine doses. The first three doses were administered as ordered; the remaining six doses were administered sporadically.

The hospital discharged Alma, and she returned to her home. However, Alma suffered increasing pain after her discharge. Eventually, Alma's incision opened, and she entered the emergency room at Culver Union Hospital. The emergency room physician diagnosed her as suffering from a very serious staph infection. The next day, Alma was transferred to Methodist Hospital. On March 7, her sternum and infected tissue were removed. Alma underwent two addi-

tional surgeries to clean the chest cavity and create a chest wall. Alma remained in Methodist's critical care unit on a respirator for the next four months. After being discharged from the hospital, Alma's health deteriorated. She suffered continuous pain and required continuous care until she died in 1993.

Cheryl filed a proposed complaint for damages against Methodist, Dr. Harold Halbrook and Nurse Howard Majors alleging medical malpractice.[1] A medical review panel concluded the defendants did not violate the applicable standard of care. Nonetheless, Cheryl filed a complaint against Methodist, Dr. Halbrook and Nurse Majors alleging medical malpractice. Methodist filed a motion for summary judgment based upon the opinion of the medical review panel. Cheryl responded by submitting the affidavit of Barbara A. Parks, R.N. who testified that the nursing care of Methodist fell below the applicable standard of care when Methodist's nursing staff failed to follow the physician's orders. The trial court denied Methodist's motion for summary judgment because Cheryl demonstrated a genuine issue of material fact as to whether Methodist violated the applicable standard of care and Methodist failed to provide any evidence demonstrating the absence of a genuine issue of material fact as to causation. Consequently, Methodist filed a second motion for summary judgment along with the affidavit of Dr. Zeckel who affirmed that Methodist's conduct did not cause Alma's injuries. At the hearing on its motion, Methodist filed a motion to strike the affidavit of Nurse Parks. The trial court granted both motions.

### I.

The first issue for review is whether the affidavit of Dr. Zeckel was admissible. Cheryl contends that Dr. Zeckel's affidavit does not meet the requirements of admissible expert testimony because it "does not support the negation of an increased risk of infection," "is fatally flawed on its logic," and "is not supported with sufficient facts." Appellant's brief, p. 12. Methodist responds by asserting that Cheryl has waived any objection to the admissibility the affidavit because her motion to strike was filed untimely.

We have held that a party's failure to raise an objection to, or move to strike, an affidavit prior to the filing of its proposed findings of fact and conclusions of law in summary judgment proceedings constitutes a waiver of that objection. *Gallatin Group v. Central Life Assur. Co.*, 650 N.E.2d 70, 73–74 (Ind.Ct.App.1995). As proposed findings of fact and conclusions of law are filed prior to a trial court's ruling on a motion for summary judgment, any objection raised to an affidavit after a ruling on summary judgment is also waived as untimely.

Here, the trial court granted summary judgment for Methodist on May 13, 1996. Cheryl filed a motion to correct errors on June 12, 1996. On September 16, 1996, Cheryl filed her motion to strike the affidavit of Dr. Zeckel. As the motion to strike was filed subsequent to the trial court granting summary judgment, Cheryl has waived any objection to the admissibility of Dr. Zeckel's affidavit. *See id.*

Waiver notwithstanding, the affidavit of Dr. Zeckel was admissible. We have held that "[w]hether a witness is competent to testify as an expert is a matter for the trial court's determination," and we review the trial court's judgment only for an abuse of discretion. *Randolph County Hosp. v. Livingston*, 650 N.E.2d 1215, 1219 (Ind.Ct.App. 1995). Our supreme court has held that the competence of an expert is established where an affidavit states that the purported expert attended school, became licensed, and practices in Indiana. *Jordan v. Deery*, 609 N.E.2d 1104, 1110 (Ind.1993). Here, Dr. Zeckel's affidavit read in relevant part:

"I am a physician licensed to practice medicine in the State of Indiana. I am board certified in Internal Medicine and Infectious Diseases, and have written and researched extensively in the field of infectious diseases. I am currently Senior Clinical Research Physician at Lilly Research Laboratories. (See Curriculum Vitae attached)."

Record, p. 103. Dr. Zeckel's curriculum vitae indicated that he obtained his medical degree from Indiana University Medical

---

**1.** Dr. Halbrook and Nurse Majors are not participating in this appeal.

Center in Indianapolis, Indiana. Applying *Jordan*, we hold that Dr. Zeckel's affidavit demonstrates he was competent to offer an expert opinion and, therefore, was admissible. *See Randolph County Hosp.*, 650 N.E.2d at 1219.

## II.

■ The second issue for review is whether Dr. Zeckel's affidavit was sufficient to demonstrate the absence of a genuine issue of material fact as to causation.[2] Our supreme court has held that an affidavit is sufficient to demonstrate the existence of a genuine issue as to causation where it includes: (1) the expert's credentials; (2) a statement by the expert that she has reviewed the relevant medical records; and, (3) the expert's conclusion that the defendants violated the standard of care in their treatment which in turn caused the plaintiff's injuries. *Jordan*, 609 N.E.2d at 1111. Similarly, we now hold that an affidavit is sufficient to demonstrate the *absence* of a genuine issue as to causation where it includes the expert's credentials, a statement by the expert that he has reviewed the relevant medical records, and the expert's conclusion that the defendants conduct did not cause the injury.

■ We have determined that Dr. Zeckel's affidavit sufficiently established his credentials. In addition, Dr. Zeckel affirmed that:

"4. [A]uthorities suggest that 'postoperative doses of prophylactic drugs are generally unnecessary. Therefore, a failure to administer postoperative prophylactic antibiotics in a timely manner would not materially affect the risk of postoperative infection.

5.... [An] authoritative source suggests that 'it remains unclear as to whether whole body disinfection with chlorhexidine has a significant effect on reducing the rate of surgical wound infections.['] Fur-

thermore, this source goes on to state that 'the recommendation that total-body bathing with an antiseptic be instituted as a preventative measure for surgical wound infections must await further study.'

6. In summary, the infection that [Alma] suffered is unfortunate; however, there is no evidence that this event would have been prevented by a pre-operative Hibiclens shower or by precisely timed postoperative administration of prophylaxis on an every six hour schedule. This type of infection is a known complication of open heart surgery. Based upon my review of [Alma's] records, I do not believe that the actions, or inactions, of Methodist Hospital's staff caused [Alma's] sternal wound infection."

Record, pp. 104–105. As Dr. Zeckel reviewed Alma's medical records and concluded Methodist's conduct did not cause her infection, his affidavit is sufficient to demonstrate the absence of a genuine issue of material fact as to causation for summary judgment proceedings.[3] *See Jordan*, 609 N.E.2d at 1111.

## III.

■ The third issue is whether the trial court erred in granting Methodist's motion to strike the affidavit of Nurse Parks. The trial court granted Methodist's motion because

"Nurse Parks' experience as a registered nurse and her statement that she has training in cardiac care does not qualify her to testify as an expert on the causation of post-operative wound infections. As a registered nurse, Mrs. Parks does not have the same education, training or experience as would a physician trained in this area, all of which are generally necessary to render an opinion of benefit to the trier of fact."

Record, p. 89. Therefore, we address the sufficiency claim raised on appeal.

2. Although Cheryl did not specifically challenge the sufficiency of Dr. Zeckel's affidavit before the trial court, she did claim in her memorandum in support of her opposition to Methodist's motion for summary judgment that:

"[Dr. Zeckel] cannot testify that if the procedures were administered correctly, Alma Furr would have still contracted her infection, He cannot possibly know their effect because they were not given as ordered."

3. Cheryl's challenges the logical validity of Dr. Zeckel's affidavit. In addition, she challenges the validity of the authorities relied upon by Dr. Zeckel. As these challenges do not address our standard delineated above, and the resolution of the challenges is not necessary to reach our conclusion, we do not address them.

Record, p. 59. Cheryl argues that nurses "are qualified to give expert testimony on topics within their training and experience, including medical causation relating to infections, disease prevention measures, and the possible results of the failure to properly execute such preventative measures."[4] Appellant's brief, p. 16. Methodist contends that the trial court properly excluded Nurse Parks' affidavit as to the issue of causation. Therefore, we first address whether Nurse Parks may offer expert testimony as to the medical cause of Alma's injuries.

■ In addressing whether Nurse Parks may offer expert testimony on causation, we find the requirements for a witness to be qualified to offer expert testimony on the applicable standard of care instructive. We have held that "[i]n an action for [medical] malpractice, whether the defendant used suitable professional skill must generally be proven by expert testimony, that is, other physicians, surgeons, or orthodontists, as the case may be." *Stackhouse v. Scanlon*, 576 N.E.2d 635, 639 (Ind.Ct.App.1991), *trans. denied.* Where the offered witness does not have the "same education, training or experience [as that of the defendant], all of which are generally necessary to render an opinion of benefit to a jury," the witness is generally not qualified to serve as an expert. *Id.* (holding that chiropractors are generally not qualified to serve as experts in cases involving physicians).

In *Stryczek v. The Methodist Hosps., Inc.*, we compared the statutory authority of physicians and registered nurses. *Stryczek v. The Methodist Hosps., Inc.* (1998), Ind.App., 694 N.E.2d 1186, 1189. Specifically, we found that:

"Physicians receive unlimited licenses as to the entire medical field; registered nurses receive licenses which limit the services they may perform. *See* Ind.Code §§ 25–23–1–1.1 and 25–22.5–1–1.1. Specifically, physicians are authorized to engage in the 'diagnosis, treatment, correction, or prevention of any disease....' I.C. § 25–22.5–1–1.1. Under this statute, diagnosis is defined as the examination of 'a patient, parts of a patient's body, substances taken or removed from a patient's body, or materials produced by a patient's body to determine the source or nature of a disease or other physical or mental condition....' I.C. § 25–22.5–1–1.1(c). Physicians are also authorized to engage in 'the suggestion, recommendation or prescription or administration of any form of treatment, without limitation....' I.C. § 25–22.5–1–1.1(a)(1)(B). In contrast, registered nurses are limited to make nursing diagnoses. These diagnoses must be amenable to a nursing regimen, defined as 'preventive, restorative, maintenance, and promotion activities which include meeting or assisting with self-care needs, counseling and teaching.' I.C. § 25–23–1–1.1(d). In addition, registered nurses are limited to treatments which are amenable to a nursing regimen. Thus, there is a significant difference in the scope of their respective diagnostic and treatment authority."

*Id.* Based upon this analysis and the difference in education and training between physicians and registered nurses, we held that nurses are not qualified to offer expert opinion as to the standard of care for physicians. *Id.* at 1189. Consequently, we held that a nurse was not qualified to offer expert testi-

4. Cheryl also argues that Methodist's motion to strike was submitted to the trial court untimely. Cheryl presented the procedural issue for the first time on appeal in her reply brief. Therein she argued that the trial court improperly granted Methodist's motion to strike because it "is basically and substantially unfair, not authorized by the Trial Rules specifically, and should not be allowed or sanctioned in the courts of Indiana." Appellant's reply brief, p. 7. We have held that "[n]ew arguments made in a reply brief are inappropriate and will not be considered on appeal." *Crist v. K–Mart Corp.*, 653 N.E.2d 140, 144 (Ind. Ct.App.1995), *reh'g denied, trans. denied.* Therefore, this issue is waived. *See id.* Moreover, we observe that in Methodist's memorandum in support of its second motion for summary judgment, it states:

"Defendants anticipate that [Cheryl] will attempt to resubmit the affidavit of [Nurse Parks] in response to this motion for summary judgment ... [i]f this affidavit is relied upon by [Cheryl], it should be stricken by the court in ruling on Methodist's motion for summary judgment because [Nurse Parks] is not competent to testify on the issue of causation in this case."

Record, p. 116. Therefore, Cheryl should have been on notice that Methodist believed the affidavit should be stricken and had communicated this to the trial court in its brief.

mony as to whether alleged deviations from the physicians' standard of care caused the plaintiff's injuries. *Id.*

We now address whether a nurse may offer expert testimony as to the medical cause of injuries generally. Again, we note that physicians are authorized to engage in the "diagnosis, treatment, correction, or prevention of any disease . . . ," whereas registered nurses are limited to make nursing diagnoses which must be amenable to a nursing regimen. *Id.* (quoting I.C. § 25–22.5–1–1.1). Because there is a significant difference in the education, training, and authority to diagnose and treat diseases between physicians and nurses, we hold that the determination of the medical cause of injuries, which is obtained through diagnosis, for purposes of offering expert testimony is beyond the scope of nurses professional expertise.[5] Thus, we now hold that nurses are not qualified to offer expert testimony as to the medical cause of injuries. Therefore, we conclude that Nurse Parks is not qualified to offer expert testimony on whether Methodist's conduct caused Alma's injuries. *See Stryczek,* 694 N.E.2d at 1189. Consequently, the trial court did not err in striking Nurse Parks' affidavit as to the issue of causation. Moreover, there was no harm in striking the affidavit because Nurse Park's affidavit could not have been used for the purposes of defending a motion for summary judgment on the issue of causation whether the trial court granted or denied the motion to strike. In essence, the trial court held that Nurse Parks was not qualified to testify as to causation. In this, there is no error.

**IV.**

The fourth issue for review is whether there is a genuine issue of material fact as to whether Methodist's alleged negligence increased the risk of harm to Alma under the Restatement (Second) of Torts § 323.[6] Cheryl first contends that Dr. Zeckel's affidavit did not address the issue of increased risk of harm. However, under § 323, the plaintiff must prove "negligence and an increase in the risk of harm" before the jury "is permitted to decide whether the medical malpractice was a substantial factor in causing the harm suffered by the plaintiff." *Mayhue v. Sparkman,* 653 N.E.2d 1384, 1388 (Ind.1995). As a corollary, we now hold that where the movant has demonstrated the absence of a genuine issue of material fact as to causation, the burden is on the nonmovant to demonstrate a genuine issue of fact as to an increased risk of harm to survive a motion for summary judgment. *See id.*

Cheryl next contends that Nurse Parks' affidavit offers expert testimony concluding that Methodist's conduct increased Alma's risk of harm. Thus, the question is whether Nurse Parks is qualified to offer expert testimony as to whether Methodist's conduct increased Alma's risk of harm. We first note that the language in Nurse Parks' affidavit does not state that Methodist's conduct increased the risk of harm to Alma. Rather, Nurse Parks affirms that "the nursing care fell below the requisite standard of care and was a causative factor which may have contributed to the infection suffered by

---

5. Cheryl directs us to *Raby v. Montgomery County Prison Board,* 1990 WL 18679, 1990 U.S. Dist. Lexis 1963 (E.D.Pa.1990) as supporting her argument that nurses may offer expert testimony as to medical causation issues. However, in *Raby,* the court stated that the nurse testified about "the factual issues . . . and her prior experiences with women experiencing spot bleeding." *Id.* at *3. The court did not address whether nurses are qualified to offer expert opinion as to medical causation issues. Therefore, the case is inapplicable.

6. The Restatement (Second) of Torts § 323 (1965) provides in relevant part that:

"[o]ne who undertakes, gratuitously or for consideration, to render services which he should recognize as necessary for the protection of the

other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

(a) his failure to exercise such care increases the risk of such harm. . . ."

In *Mayhue v. Sparkman,* 653 N.E.2d 1384 (Ind. 1995), our supreme court adopted § 323 as the approach that is most consistent with Indiana law where "a negligent health care provider claims that the recovery of damages is not warranted because the patient would have suffered injury or death anyway." *Id.* at 1388. The court held that "[w]hen 323 governs a case, it permits the plaintiff to avoid summary judgment on the issue of proximate cause even when there was a less than 50 percent chance of recovery absent the negligence. . . ." *Id.*

[Alma]." Record, p. 151. However, even if the statement is a conclusion that Methodist's conduct increased the risk of harm to Alma, we hold that such a conclusion is so related to causation and the treatment ordered by physicians that a registered nurse is not qualified to offer expert testimony as to increased risk of harm. Thus, we conclude, as apparently did the trial court, that Nurse Parks's affidavit presented nothing that could generate a genuine issue of material fact as to the increased risk of harm to Alma.

## V.

The final issue for review is whether the trial court erred in granting Methodist's motion for summary judgment. Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). The moving party has the initial burden of proving these requirements. *Shumate v. Lycan,* 675 N.E.2d 749, 752 (Ind.Ct.App.1997), *trans. denied,* 683 N.E.2d 595. Once the movant has sustained this burden, the opponent must respond by setting forth specific facts showing a genuine issue for trial; the opponent may not simply rest on the allegations of the pleadings. *Stephenson v. Ledbetter,* 596 N.E.2d 1369, 1371 (Ind.1992). On appeal, we are bound by the same standard as the trial court and may consider only those matters which were designated at the summary judgment stage of proceedings. *Shumate,* 675 N.E.2d at 752. We do not weigh evidence, but will consider the facts in the light most favorable to the nonmoving party. *Reed v. Luzny,* 627 N.E.2d 1362, 1363 (Ind.Ct.App. 1994), *reh'g denied, trans. denied.*

We have held that to establish a prima facie case of medical malpractice, a plaintiff must designate expert testimony establishing the applicable standard of care required by Indiana law, the defendant's failure to meet the applicable standard of care, and the causal relationship between the defendant's negligence and the plaintiff's injuries. *Chambers by Hamm v. Ludlow,* 598 N.E.2d 1111, 1116 (Ind.Ct.App.1992). When the defendant is the moving party and demonstrates the absence of a genuine issue of material fact as to any one of the aforementioned elements, "the

defendant is entitled to summary judgment as a matter of law unless the plaintiff can establish, by expert testimony, a genuine issue of material fact for trial." *Hoskins v. Sharp,* 629 N.E.2d 1271, 1277 (Ind.Ct.App. 1994), *reh'g denied.*

 Here, Methodist designated the affidavit of Dr. Zeckel which stated that Methodist's conduct did not cause Alma's injuries. Thus, Methodist properly put the issue of causation before the trial court. *See Hoskins,* 629 N.E.2d at 1279 (holding that the issue of proximate cause was not before the court absent expert testimony establishing that no genuine issue of material fact as to proximate cause). At this point, the burden shifted to Cheryl to designate some evidence that a genuine issue of material fact existed as to causation. *Kennedy v. Murphy,* 659 N.E.2d 506, 508 (Ind.1995). Aside from Nurse Parks' affidavit, which cannot be used for causation, Cheryl did not designate any evidentiary material to rebut the opinion of Dr. Zeckel's affidavit. Moreover, Nurse Parks is not qualified to offer expert testimony as to an increased risk of harm. Consequently, Cheryl has not demonstrated the existence of a genuine issue of material fact as to causation or an increased risk of harm. Therefore, the trial court did not err in granting summary judgment to Methodist. *Chambers by Hamm,* 598 N.E.2d at 1116.

For the foregoing reasons, we affirm the judgment of the trial court.

Affirmed.

STATON, J., concurs.

RUCKER, J., concurs in result.