Constance Renee NASSER,
Appellant–Plaintiff,

v.

ST. VINCENT HOSPITAL AND
HEALTH SERVICES,
Appellee–Defendant.

No. 49A02–0910–CV–955.

Court of Appeals of Indiana.

April 14, 2010.

Rehearing Denied June 2, 2010.

Joseph J. Reiswerg, Carmel, IN, Attorney for Appellant.

Angela M. Smith, Hall Render Killian Health & Lyman P.C., Indianapolis, IN, Attorney for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary[1]

Constance Renee Nasser appeals the trial court's entry of summary judgment in favor of St. Vincent Hospital and Health Services on her complaint for medical malpractice. Specifically, she contends that while she was a patient at St. Vincent Hospital in 2001, the hospital committed malpractice when the nursing staff did not respond to her repeated calls for help and allowed her to deliver two eighteen-week stillborn fetuses alone in her hospital bed.

The trial court entered summary judgment in favor of St. Vincent because it believed that Nasser was required to designate physician expert testimony on causation. Nasser appeals, arguing that the lone medical review panel member who found in her favor, a registered nurse, was qualified to render an expert opinion on causation.

Although the Medical Malpractice Act allows health care providers, such as registered nurses, to serve on medical review panels and provides that the panel's opinion is admissible in court, we conclude that Indiana Evidence Rule 702, which trumps any statute, may prohibit such non-physician health care providers' opinions as to medical causation from being admitted in court to create a genuine issue of material fact in a summary judgment proceeding or to serve as substantive evidence at trial. This is because the health care providers may not be qualified by knowledge, skill, experience, training, or education to give opinions as to medical causation. In this case, we conclude that the nurse's opinion is not admissible to prove causation. Because Nasser conceded that expert testimony was required but did not designate any other evidence to establish that St. Vincent Hospital's failure to respond to her repeated calls caused her increased emotional distress when she miscarried her twins alone in her hospital bed, we affirm the trial court's entry of summary judgment in favor of St. Vincent.

### Facts and Procedural History[2]

In July 2001 Nasser was a thirty-five-year-old woman with a problematic twin

---

1. We held oral argument in this case on March 4, 2010, in the Indiana Court of Appeals' courtroom.

2. We note that Nasser's Statement of Facts is not supported by page references to the record on appeal or appendix in violation of

Indiana Appellate Rule 46(A)(6)(a). In response, St. Vincent cites to Nasser's brief, not the record, for its facts. This has hindered our review of the case. In addition, Nasser's argument section does not contain the appli-

pregnancy. On July 23, 2001, Dr. Adam Hiett performed an amniocentesis on Nasser at St. Vincent Hospital in Indianapolis. Nasser signed a consent form that informed her of the risks and complications of the procedure, including miscarriage. On the following morning, July 24, Nasser woke up and noticed some fluid leaking from her. She called her OB/GYN Dr. Sara Murphy and was instructed to go to St. Vincent Hospital to be evaluated for possible leakage of amniotic fluid. Nasser, who was eighteen weeks pregnant at the time, was admitted to the hospital for observation.

Though the record on appeal is not detailed because of the limited amount of evidence designated on summary judgment, the facts most favorable to Nasser appear to be that around 6:00 p.m. on July 25, while Nasser was still hospitalized, she began experiencing severe abdominal pain. Nasser then instructed her husband, Greg Nasser, to find someone to help her. The nurses said that the doctor on call was in emergency surgery and they had to wait for him to finish before they could administer pain medicine. Greg then asked the nurses to call Nasser's own doctor, Dr. Murphy. Apparently Dr. Murphy was not called. Around 8:00 p.m., when the pain had escalated, Nasser was finally given a shot of pain medicine. Because Nasser felt a little relief from the shot, around 10:00 p.m. Greg told Nasser that he was going home to sleep and would return soon. After Greg left, Nasser got up to use the restroom, at which point she observed blood coming from her. She went back to her bed, lay down, and suddenly felt a baby come. She pushed the call button to summon a nurse, but no one responded. She pushed the call button again and again, but still no one responded. She then screamed, "Help me, help

me." Appellant's App. p. 49. But no one came to Nasser's aid. Nasser then called Greg, who by this point had made it home. She told him to hurry because she was having the babies and no one would help her. Nasser, alone, delivered two preterm, stillborn fetuses in her hospital bed.

According to Nasser, Greg walked into the room just as the doctors and nurses were coming into her room, and he yelled at them, "[W]here were you?" *Id.* Also according to Nasser, the nurses were yelling at each other, "[W]here were you? Why didn't you help her?" *Id.* at 54. The nurses then administered morphine to Nasser, at which point everything became a "big cloud." *Id.* at 49.

Nasser filed a proposed complaint against St. Vincent Hospital with the Indiana Department of Insurance ("IDOI") in January 2003. Nasser did not include Dr. Hiett in the proposed complaint because "what happened is a known complication of an amniocentesis." Appellant's Br. p. 8. Nasser alleged in the proposed complaint that "[w]hile being left unattended in her room and in bed, [she] began to deliver two premature fetuses and began to call for nursing assistance. [Her] repeated calls for help went unheeded and she was left alone to deliver two stillborn [fetuses] in a puddle of blood in her bed." Appellant's App. p. 72. She specifically alleged that St. Vincent was negligent "in that the staff failed to respond to [her] repeated calls for help and requests for pain medication and permitted her to deliver two stillborn fetuses by herself." *Id.* Nasser alleged that as a direct and proximate result of St. Vincent's negligence, she suffered "severe emotional distress which required medical care and medication (which medication she is still taking for depression), extreme mental anguish from

cable standard of review. *See* App. R. 46(A)(8)(b).

watching the spontaneous abortion of two fetuses and the incurring of medical costs." *Id.*

A medical review panel was formed and consisted of the following members: (1) Keith R. Davis, M.D.; (2) Margaret Busacca, R.N.; and (3) Polly Trainor, M.D. The medical review panel issued the following decision in May 2008:

> Drs. Trainor and Davis find that the evidence does not support the conclusion that [St. Vincent Hospital] failed to meet the applicable standard of care as charged in the complaint and the conduct complained of was not a factor of the resultant damages.
>
> Margaret Busacca, R.N., finds that the evidence supports the conclusion that [St. Vincent Hospital] failed to meet the applicable standard of care as charged in the complaint and the conduct complained of was a factor of the resultant damages.

*Id.* at 90.

Thereafter, on August 18, 2008, Nasser filed a complaint in Marion Superior Court. The allegations in the complaint are substantially similar to those in the proposed complaint. Nasser's attorney confirmed at oral argument that she is only seeking damages for emotional distress. Thereafter St. Vincent moved for summary judgment. The hospital designated Nasser's proposed complaint with the IDOI and the medical review panel's opinion in its favor. Specifically, St. Vincent argued that Nasser was "required to come forth with physician expert testimony to support her claim that her alleged injuries and damages were caused by substandard medical care by St. Vincent." *Id.* at 27. Nasser responded to St. Vincent Hospital's motion for summary judgment and designated portions of her own deposition.[3] Nasser later filed a cross-motion for summary judgment against St. Vincent. Nasser designated her proposed complaint with the IDOI and the medical review panel's opinion.[4] St. Vincent opposed Nasser's cross-motion for summary judgment and designated the affidavit of medical review panelist Dr. Trainor. Dr. Trainor, a practicing OB/GYN, set forth specific facts averring that St. Vincent did not breach the applicable standard of care or cause Nasser's injuries. *See id.* at 108–09.

On June 11, 2009, the trial court entered an order including facts, law, and a conclusion granting St. Vincent Hospital's motion for summary judgment and denying Nasser's cross-motion for summary judgment. The court framed the issue as whether Nasser was required to designate an opinion from an expert physician because the medical review panel found against her. The court relied almost exclusively on *Long v. Methodist Hospital,* in which this Court held that nurses, who are limited to making nursing diagnoses which must be amenable to a nursing regimen, are not qualified to offer expert testimony as to the medical cause of injuries. 699 N.E.2d 1164, 1169 (Ind.Ct.App.1998), *trans. denied.* The trial court's order thus provides:

> The law is clear in the State of Indiana that only a physician can testify to causation. In this case, only a physician

---

**3.** Nasser also designated a letter from a registered nurse, Jennifer Coomler. However, the trial court later struck the letter as inadmissible. Appellant's App. p. 110–11. Nasser does not appeal the inadmissibility of the letter.

Although Nasser includes a large part of her deposition in her appendix, she only designated a very small part of it for purposes of summary judgment. *See id.* at 41.

**4.** Again, Nasser designated Coomler's letter, which the trial court later struck as inadmissible.

would be permitted to testify as to the gestation of a fetus, what is a viable fetus, the appropriate treatment for a woman with Nasser's symptoms of fever, possible chorioamnionitis; and whether the physicians and nursing staff on call at the time could have avoided the severe emotional distress which Nasser suffered when the eighteen week old twins were spontaneously stillborn. Most importantly only a physician can testify that the birth of the stillborn twins caused Nasser's severe emotional distress which required medical care and treatment. Under *Long*, Nasser is required to come forward with expert medical testimony on the issue of causation. In this case, Nasser has come forward with no expert testimony from a physician. Therefore, the Defendant, St. Vincent Hospital, has shown that no genuine issues of material fact exist, and the Defendant is entitled to judgment as a matter of law. The Plaintiff[ ] in [her] Cross Motion for Summary Judgment [has] failed to show that there is a genuine issue of material fact in dispute and Plaintiff is not entitled to summary judgment as a matter of law.

Appellant's App. p. 118. Nasser filed a motion to correct errors, which the trial court denied. Nasser now appeals.

### Discussion and Decision

Nasser contends that the trial court erred by entering summary judgment in favor of St. Vincent Hospital and by not granting her cross-motion for summary judgment. Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind.

Trial Rule 56. We construe all facts and reasonable inferences drawn therefrom in a light most favorable to the non-moving party. *McSwane v. Bloomington Hosp. & Healthcare Sys.*, 916 N.E.2d 906, 909 (Ind. 2009). Our review of a summary judgment motion is limited to those materials designated to the trial court. *Mangold ex rel. Mangold v. Ind. Dep't of Natural Res.*, 756 N.E.2d 970, 973 (Ind.2001). Although the non-moving party has the burden on appeal of persuading us that the grant of summary judgment was erroneous, we carefully assess the trial court's decision to ensure that she was not improperly denied her day in court. *McSwane*, 916 N.E.2d at 909–10.

The fact that the parties make cross-motions for summary judgment does not alter our standard of review. *Ky. Nat'l Ins. Co. v. Empire Fire & Marine Ins. Co.*, 919 N.E.2d 565, 574 (Ind.Ct.App. 2010). Instead, we must consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law. *Id.* The entry of specific findings and conclusions does not alter the nature of a summary judgment, which is a judgment entered when there are no genuine issues of material fact to be resolved. *Id.* (citing *Rice v. Strunk*, 670 N.E.2d 1280, 1283 (Ind.1996)). In the summary judgment context, we are not bound by the trial court's specific findings of fact and conclusions of law. *Id.* They merely aid our review by providing us with a statement of reasons for the trial court's actions. *Id.*

■ Medical malpractice cases are no different from other kinds of negligence actions regarding what must be proven.[5]

---

5.  Neither party raised the impact rule in their briefs. *See Atl. Coast Airlines v. Cook*, 857 N.E.2d 989, 991 (Ind.2006) ("In an action to recover damages for the negligent infliction of emotional distress, Indiana's modified impact rule requires a claimant to demonstrate a direct physical impact resulting from the negligence of another."). At oral argument, St.

*McSwane,* 916 N.E.2d at 910; *Bader v. Johnson,* 732 N.E.2d 1212, 1216–17 (Ind. 2000). The plaintiff must show: (1) a duty owed to the plaintiff by the defendant; (2) a breach of duty by allowing conduct to fall below the applicable standard of care; and (3) a compensable injury proximately caused by the defendant's breach of duty. *McSwane,* 916 N.E.2d at 910; *Bader,* 732 N.E.2d at 1217.

 "To hold a defendant liable for a plaintiff's injury, 'the defendant's act or omission must be deemed to be a proximate cause of that injury.'" *Singh v. Lyday,* 889 N.E.2d 342, 357 (Ind.Ct.App. 2008) (quoting *City of Gary ex rel. King v. Smith & Wesson Corp.,* 801 N.E.2d 1222, 1243 (Ind.2003)), *trans. denied; see also Bader,* 732 N.E.2d at 1218. Proximate cause involves two inquiries: (1) whether the injury would not have occurred but for the defendant's negligence and (2) whether the plaintiff's injury was reasonably foreseeable as the natural and probable consequence of the act or omission. *Singh,* 889 N.E.2d at 357. " 'When the issue of cause is not within the understanding of a lay person, testimony of an expert witness on the issue is necessary.'" *Id.* (quoting *Daub v. Daub,* 629 N.E.2d 873, 878 (Ind.Ct.App.1994), *trans. denied* ) (citing *Topp v. Leffers,* 838 N.E.2d 1027, 1033 (Ind.Ct.App.2005), *trans. denied, Dughaish v. Cobb,* 729 N.E.2d 159, 164 (Ind.Ct.App.2000), *reh'g denied, trans. denied; Schaffer v. Roberts,* 650 N.E.2d 341, 342 (Ind.Ct.App.1995) ("It is well settled that in a medical negligence claim, the plaintiff must prove by expert testimony not only that the defendant was negligent, but also that the defendant's negligence proximately caused the plaintiff's injury.")). As the Indiana Supreme Court stated in *Bader,* "It has been held that expert opinion is usually required to establish a causal connection between the acts or omissions of the physician and the injury to the patient." 732 N.E.2d at 1218 n. 6 (citing Indiana Court of Appeals cases); *see also* W.E. Shipley, Annotation, *Proximate cause in malpractice cases,* 13 A.L.R.2d 11 § 5(a) (1950) ("Since the causes of the injuries ordinarily involved in malpractice actions are determinable only in the light of scientific knowledge, it has been recognized that expert testimony is usually necessary to support the conclusion as to causation."). Our Supreme Court acknowledged, however, that it had "never addressed the precise issue of whether a 'causation' expert is required in a medical negligence case" and declined to do so in *Bader* because the issue was not before it. 732 N.E.2d at 1218 n. 6.

 The sole issue in this case is whether St. Vincent Hospital's failure to respond to Nasser's calls caused Nasser increased emotional distress when she miscarried her twins alone in her hospital bed beyond the normal emotional distress that would accompany a woman miscarrying eighteen-week twins with the assistance of hospital staff. *See Mehigan v. Sheehan,* 94 N.H. 274, 51 A.2d 632, 634 (1947) ("Damages cannot be given for the mere fact of the miscarriage. The evidence is that this would have occurred anyway. Nor can they be given for the physical and mental suffering that the wife would have endured under the usual circumstances that would have accompanied the miscarriage."). Nasser argues that Nurse Busacca, a registered nurse who was a member of the medical review panel, was qualified to render an expert opinion as to causation, thereby creating a genuine issue of material fact for trial. St. Vincent Hospital, however, argues that Nurse Busacca, although a proper member of the panel who could in

Vincent Hospital conceded that the impact  rule has been satisfied in this case.

fact render an expert opinion that St. Vincent breached the standard of nursing care, was not qualified to render an opinion as to causation because *Long* provides that nurses cannot testify as to medical causation.

We begin with an overview of the Medical Malpractice Act, which provides for the establishment of medical review panels to review proposed malpractice complaints against health care providers. Ind.Code § 34–18–10–1. A medical review panel consists of one attorney and three health care providers. *Id.* § 34–18–10–3. Except for health facility administrators, all health care providers in Indiana, whether in the teaching profession or otherwise, who hold a license to practice in their profession shall be available for selection as members of the medical review panel. *Id.* § 34–18–10–5. Health care providers include hospitals, emergency ambulance services, physicians, dentists, registered nurses, licensed practical nurses, physician assistants, midwives, optometrists, podiatrists, chiropractors, physical and occupational therapists, psychologists, EMTs, and paramedics. *Id.* § 34–18–2–14(1).

Each party to an action has the right to select one health care provider, and upon selection, the two health care providers thus selected then select the third panelist. *Id.* § 34–18–10–6. If there is only one party defendant who is an individual, two of the panelists selected must be members of the profession identified in Section 34–18–2–14(1) of which the defendant is a member. *Id.* § 34–18–10–8. Once the medical review panel is selected, the panel generally has 180 days after the selection of the last member of the initial panel to give its expert opinion. *Id.* § 34–18–10–13. The panel has the sole duty to express its expert opinion as to whether the evidence supports the conclusion that the defendant(s) acted or failed to act within the

appropriate standard(s) of care as charged in the complaint. *Id.* § 34–18–10–22(a). Specifically,

(b) After reviewing all evidence and after any examination of the panel by counsel representing either party, the panel shall, within thirty (30) days, give one (1) or more of the following expert opinions, which must be in writing and signed by the panelists:

(1) The evidence supports the conclusion that the defendant or defendants failed to comply with the appropriate standard of care as charged in the complaint.

(2) The evidence does not support the conclusion that the defendant or defendants failed to meet the applicable standard of care as charged in the complaint.

(3) There is a material issue of fact, not requiring expert opinion, bearing on liability for consideration by the court or jury.

(4) *The conduct complained of was or was not a factor of the resultant damages.* If so, whether the plaintiff suffered:

(A) any disability and the extent and duration of the disability; and

(B) any permanent impairment and the percentage of the impairment.

*Id.* § 34–18–10–22(b) (emphasis added). According to Indiana Code section 34–18–10–23, the panel's expert opinion "is admissible as evidence in any action subsequently brought by the claimant in a court of law. However, the expert opinion is not conclusive, and either party, at the party's cost, has the right to call any member of the medical review panel as a witness. If called, a witness shall appear and testify." *Id.* § 34–18–10–23.

Sometimes the medical review panel's opinion is not unanimous. In such cases,

the opinion contains both a majority opinion and a minority opinion on the same document. According to Section 34–18–2–23, the entire document, including both the majority and minority opinions, is admissible. This then brings us to the interrelationship between the admissibility of a panel opinion containing both majority and minority opinions and the problem encountered in *Long*.

In *Long*, Alma Furr was admitted to Methodist Hospital for open heart surgery. 699 N.E.2d at 1165. Before surgery, Alma's physician ordered her to be given a hibiclens shower, but she was not given one. *Id.* In addition, after surgery, Alma's physician ordered her to receive nine doses of an antibiotic every six hours; however, Alma only received three doses as ordered. *Id.* The remaining six doses were administered sporadically. *Id.* After discharge, Alma suffered increasing pain, and she went to her local emergency room, where she was diagnosed with a very serious staph infection. *Id.* Alma was transferred to Methodist Hospital, where her sternum and infected tissue were removed. *Id.* She also underwent two additional surgeries to clean her chest cavity and create a chest wall. *Id.* at 1165–66. Alma remained in the critical care unit on a respirator for four months. *Id.* at 1166. Upon release from the hospital, Alma's health deteriorated, and she required continuous care until she died. *Id.*

Cheryl Long, as personal representative of the estate of Alma, filed a proposed complaint against Methodist Hospital, Dr. Harold Halbrook, and Nurse Howard Majors alleging medical malpractice. *Id.* The medical review panel concluded that the defendants did not violate the applicable standard of care. *Id.* Nonetheless, Long filed a complaint against Methodist, Dr. Halbrook, and Nurse Majors alleging medical malpractice. *Id.* Methodist filed a motion for summary judgment based upon the opinion of the medical review panel. *Id.* Long responded by submitting an affidavit from Barbara A. Parks, R.N., who testified that the nursing care of Methodist fell below the applicable standard of care when Methodist's nursing staff failed to follow the physician's orders. *Id.* The trial court denied Methodist's motion for summary judgment because Long demonstrated a genuine issue of material fact as to whether Methodist violated the applicable standard of care and Methodist failed to provide any evidence demonstrating the absence of a genuine issue of material fact as to causation. *Id.* Consequently, Methodist filed a second motion for summary judgment along with the affidavit of Dr. Michael L. Zeckel who affirmed that Methodist's conduct did not cause Alma's injuries. *Id.* At the hearing on its motion, Methodist filed a motion to strike the affidavit of Nurse Parks. *Id.* The trial court granted the motion for summary judgment and the motion to strike. *Id.*

In addressing whether Nurse Parks could offer expert testimony on causation, we noted the differences between physicians and nurses:

"Physicians receive unlimited licenses as to the entire medical field; registered nurses receive licenses which limit the services they may perform. *See* Ind.Code §§ 25–23–1–1.1 and 25–22.5–1–1.1. Specifically, physicians are authorized to engage in the 'diagnosis, treatment, correction, or prevention of any disease....' I.C. § 25–22.5–1–1.1. Under this statute, diagnosis is defined as the examination of 'a patient, parts of a patient's body, substances taken or removed from a patient's body, or materials produced by a patient's body to determine the source or nature of a dis-

ease or other physical or mental condition. . . .' I.C. § 25–22.5–1–1.1(c). Physicians are also authorized to engage in 'the suggestion, recommendation or prescription or administration of any form of treatment, without limitation. . . .' I.C. § 25–22.5–1–1.1(a)(1)(B). In contrast, registered nurses are limited to make nursing diagnoses. These diagnoses must be amenable to a nursing regimen, defined as 'preventive, restorative, maintenance, and promotion activities which include meeting or assisting with self-care needs, counseling and teaching.' I.C. § 25–23–1–1.1(d). In addition, registered nurses are limited to treatments which are amenable to a nursing regimen. Thus, there is a significant difference in the scope of their respective diagnostic and treatment authority."

*Id.* at 1168 (quoting *Stryczek v. The Methodist Hosps., Inc.,* 694 N.E.2d 1186, 1189 (Ind.Ct.App.1998)). Because of these differences, the *Long* court noted the *Stryczek* court's holding that nurses are not qualified to offer expert opinion as to the standard of care for physicians. *Id.* (citing *Stryczek,* 694 N.E.2d at 1189).

The *Long* court then addressed whether a nurse could offer expert testimony as to the medical cause of injuries generally. The *Long* court held that because there is a significant difference in the education, training, and authority to diagnose and treat diseases between physicians and nurses, the determination of the medical cause of injuries, which is obtained through diagnosis, for purposes of offering expert testimony is beyond the scope of nurses' professional expertise. *Id.* at 1169. Therefore, the *Long* court concluded that Nurse Parks was not qualified to offer expert testimony on the issue of whether Methodist's conduct caused Alma's injuries. *Id.* Consequently, the trial court did not err in striking Nurse Parks's affi-

davit as to the issue of causation. *Id.; see also Clarian Health Partners, Inc. v. Wagler,* 925 N.E.2d 388, 398 (Ind.Ct.App.2010) ("Based upon *Long,* we conclude that Nurse Little's affidavit was inadmissible for the purpose of creating an issue of fact regarding whether Clarian's actions were the proximate cause of Wagler's injuries.").

Though not the explicit basis for the *Long* court's holding, this holding implicates Indiana Evidence Rule 702. Rule 702 provides:

(a) If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, *a witness qualified as an expert by knowledge, skill, experience, training, or education,* may testify thereto in the form of an opinion or otherwise.

(b) Expert scientific testimony is admissible only if the court is satisfied that the scientific principles upon which the expert testimony rests are reliable.

(Emphasis added). Two requirements must be met in order for a witness to qualify as an expert. *Spaulding v. Harris,* 914 N.E.2d 820, 829 (Ind.Ct.App.2009), *reh'g denied.* First, the subject matter must be distinctly related to some scientific field, business, or profession beyond the knowledge of the average layperson; and second, the witness must be shown to have sufficient skill, knowledge, or experience in that area so that the opinion will aid the trier of fact. *Id.* That is, the *Long* court concluded that because Nurse Parks was not qualified as a physician by knowledge, skill, experience, training, or education, she was not entitled to testify as to the medical cause of Alma's injuries.

Cases such as this one, where a non-physician health care provider serves on a medical review panel and gives a minority opinion as to medical causation,

take *Long* one step farther. That is, if a nurse (or some other non-physician health care provider) serves on a medical review panel and provides a minority opinion as to medical causation, is his or her opinion admissible in court to create a genuine issue of material fact in a summary judgment proceeding or to serve as substantive evidence at trial? According to Section 34–18–10–23, the answer is yes. However, according to Evidence Rule 702, the answer may be no. When there is a conflict between a statute and a rule of evidence, the rule of evidence prevails over any statute. *See Humbert v. Smith,* 664 N.E.2d 356, 357 (Ind.1996). Thus, in such a circumstance, Evidence Rule 702 would prevail, and the nurse's (or other non-physician health care provider's) opinion as to medical causation would be inadmissible at either the summary judgment stage or trial.

Nasser concedes that expert testimony is required in this case.[6] Since we have already determined in *Long* that there is a significant difference in the education, training, and authority to diagnose and treat diseases between physicians and nurses and that the determination of the medical cause of injuries for purposes of offering expert testimony is beyond the scope of nurses' professional expertise, Nurse Busacca is not qualified to give her expert opinion as to medical causation in this case. Indeed, under Evidence Rule 702(B), Nurse Busacca does not have the qualifications to do so. Because Nasser did not designate any other evidence on the issue of causation, the trial court properly entered summary judgment in favor

of St. Vincent Hospital. We therefore affirm the trial court.

Affirmed.

RILEY, J., and CRONE, J., concur.

L.W., **Appellant–Respondent,**

v.

---

6. Neither party briefed the common knowledge exception, which is an exception to the general rule that expert testimony is required to prove causation. *See Singh,* 889 N.E.2d at 357–58. Although this exception was discussed at oral argument, Nasser nevertheless still conceded that expert testimony was required. We therefore do not address this issue.