Sotirios G. NIKOU, Appellant–Plaintiff,

v.

**INB NATIONAL BANK,
Appellee–Defendant.**

No. 49A05–9401–CV–2.

Court of Appeals of Indiana,
Fifth District.

July 28, 1994.

John R. Price, Indianapolis, IN, for appellant.

James G. Lauck, Marcia E. Roan, Kroger Gardis & Regas, Steven L. Yount, Indianapolis, IN, for appellee.

SHARPNACK, Chief Judge.

Sotirios G. Nikou appeals the trial court's entry of summary judgment in favor of Indiana National Bank (INB) in his action against INB, and the trial court's denial of his cross-motion for summary judgment. We affirm.

Nikou presents four issues for appeal, which we consolidate and restate as:

1. whether the trial court erred in granting summary judgment in favor of INB because there existed genuine issues of material fact regarding Nikou's status as a co-maker of the installment loan note at issue;

2. whether the trial court erred in granting summary judgment in favor of INB because there existed genuine issues of material fact and conflicting inferences regarding INB's credit reporting practices; and,

3. whether the trial court erred in denying Nikou's motion for summary judgment because INB failed to respond to Nikou's motion and erred in granting INB's motion because INB failed to designate specific evidentiary matter in its motion.

In 1990, Nikou was general manager of an automobile dealership in Indianapolis. One of his employees, Michael G. Cole, asked Nikou for personal assistance in regard to debt consolidation. Nikou approached his bank, INB, about providing Cole with a loan. INB informed Nikou that it would grant the loan if Nikou signed the loan agreement as a guarantor. Subsequently, INB requested Nikou to sign as a co-maker.

The loan was evidenced by an installment loan note (the Note), which was executed by Cole and co-signed by Nikou. The Note called for monthly installment payments to INB in the amount of $216.99, commencing on July 15, 1990. Nikou and Cole reached an agreement concerning the loan whereby, in return for Nikou's co-making of the loan, Cole would give Nikou a lien upon Cole's BMW automobile. Before that agreement could be completed, however, INB disbursed the $6,000.00 proceeds of the loan to Cole on June 1, 1990, in Cole's name only. Cole made no payments under the Note. Consequently, INB looked to Nikou for payment.

Nikou consented to INB deducting payments due under the Note from a business checking account maintained at INB by him. The July 15, 1990 installment under the Note was already thirty days past due when Nikou agreed to allow INB to debit his account. On November 15, 1990, Nikou requested INB to debit his account each month until he filed a lawsuit against Cole. However, the INB collection officer and Nikou agreed instead to debit his account for the delinquent October loan payment only.

Installments under the Note continued to run past due throughout the collection period of July 15, 1990 to July 10, 1992. Collection letters were regularly mailed to Nikou, advising him that the payments under the Note were delinquent. In July, 1992, in response to a threatened lawsuit by INB against Nikou regarding the continued delinquency of past due installments on the loan, Nikou agreed to allow INB to debit his account to bring the account current.

In 1992, INB furnished information to local credit reporting agencies concerning Nikou, who was seeking loans and refinancing from lending institutions, including a signature line of credit from INB. With respect to the Note which Nikou had co-signed, INB informed the credit reporting agencies that fifteen payments were thirty days late, four payments were sixty days late, and one payment was ninety days late. That information was included in Nikou's credit report. Subsequently, the lending institutions denied Nikou credit. Nikou requested INB to correct the credit reporting error. INB responded to Nikou's request stating that its reporting was accurate, correct, and true.

On December 17, 1992, Nikou filed a two count complaint against INB. In Count I, Nikou asserted that there was no consideration to support his obligations as a co-maker on the Note executed and delivered to INB. In Count II, Nikou alleged that INB had furnished incorrect information to local credit reporting agencies.

INB filed its answer to Nikou's complaint and later filed a motion for summary judgment. Nikou filed a cross-motion for summary judgment. Following a hearing on the motions, the trial court entered an order on October 8, 1993, denying Nikou's and granting INB's motion for summary judgment. Subsequently, the trial court entered judgment for INB.

■ When we review a summary judgment, we are bound by the same standard as the trial court: We may only consider those portions of the pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice, and any other matters designated to the trial court by the moving party for purposes of the motion for summary judgment. *Rosi v. Business Furniture Corp.* (1993), Ind., 615 N.E.2d 431, 434; Ind.Trial Rule 56(C), (H). In addition, the opposing party must designate to the trial court "each material issue of fact which that party asserts precludes entry of summary judgment and the evidence relevant thereto." *Id.* (quoting T.R. 56(C)). All properly asserted facts and reasonable inferences should be resolved against a moving party. *Indiana Board of Public Welfare v. Tioga Pines* (1993), Ind., 622 N.E.2d 935, 940, *cert. denied* (1994), —— U.S. ——, 114 S.Ct. 1302, 127 L.Ed.2d 654.

■ The fact that both parties to an appeal requested summary judgment does not alter our standard of review. We consider each motion separately to determine whether there is a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. *Fischer v. Kaylor* (1969), 145 Ind.App. 148, 250 N.E.2d 19, 22.

### I.

■ Nikou argues first that the trial court erred in granting summary judgment in favor of INB because there existed genuine issues of material fact regarding Nikou's status as a co-maker of the Note. Specifically, Nikou argues that the trial court erred in granting summary judgment as to Count I of his complaint because, as a co-maker of the Note, he was not liable because he had received no consideration for the Note. We disagree. It is settled that a joint note does not require joint consideration. *Toskos v. Swank* (1991), Ind.App., 578 N.E.2d 712, 715 (citing *Spielman v. Herskovitz* (1922), 78 Ind. App. 131, 134 N.E. 909, 912). Consideration moving to either maker of a note is sufficient to support the obligation of both. *Id.; see also Bingham v. Kimball* (1870), 33 Ind. 184, 184 ("It was not necessary that the consideration for the note should pass to the defendant. The consideration must be some benefit to the party by whom the promise is made, or to a third person at his instance; or some detriment sustained at the instance of the party promising, by the party in whose favor the promise is made."); *Anderson v. Meeker* (1869), 31 Ind. 245, 246 ("If the note,

which was executed by appellant, had a consideration to support it, that was sufficient, whether received by the appellant or some one else with his consent."); *Moehlenkamp v. Shatz* (1979), Ind.App., 396 N.E.2d 433, 439 ("It is not necessary that consideration flow directly from the payee to *both* makers of a note in order to bind the makers.") (emphasis in original).

■ Nikou admits and the designated evidence in the record shows that he was a co-maker of the Note. Thus, Cole's receipt of the $6,000.00 loan proceeds was sufficient consideration to make Nikou liable for repayment of the Note.[1]

Nikou argues further that there existed a genuine issue of material fact as to whether INB was negligent in issuing a check solely in Cole's name because Nikou had requested INB not to issue the funds to Cole until Nikou had an opportunity to obtain a lien on Cole's automobile. We are unpersuaded by Nikou's argument. The only evidence Nikou designated to the trial court supporting this claim is a colloquy between Nikou and INB's attorney found in Nikou's deposition:

"Q This signed agreement that you wanted to have with Mr. Cole—

A Yes.

Q —was that something that was discussed in front of Penny Lewis?

A Penny Lewis overheard the conversation where I explained to Mike where I was going to hold him accountable with some kind of collateral. Mike understood it. How much Penny listened was up to her. It was at her desk.

Q Did you explain to Penny that you did not want the loan disbursed until you had a chance to complete your signed agreement with Mr. Cole?

A I'm sure that was the implication. I don't know exactly what was said. But there wouldn't have been any reason for me to press that with her because the check was not going to be issued until later that afternoon or the following day anyway. As far as I was concerned there was no problem."

Record, pp. 105–106.

■ In Indiana, the tort of negligence consists of (1) a duty owed to the plaintiff by the defendant, (2) a failure of the defendant to conform his conduct to the standard of care required by the relationship, and (3) an injury to the plaintiff resulting from the defendant's failure. *Indiana Nat. Bank v. Chapman* (1985), Ind.App., 482 N.E.2d 474, 482. In the instant case, INB had no duty to Nikou as co-maker of the loan to issue a check in both his and borrower Cole's name. Moreover, INB had no duty to delay issuing the check to Cole without explicit guidance from Nikou or Cole on the matter. The designated evidence shows that Nikou failed to include the INB representative in the conversation between him and Cole or to request that INB not issue a check until after he and Cole had completed their agreement. Thus, no request having been made, there can be no negligence based on INB's failure to honor the request.

We therefore find that the trial court did not err in granting summary judgment in favor of INB as to Count I.

## II.

Nikou argues next that the trial court erred in granting summary judgment as to Count II of his complaint. Nikou contends that there were genuine issues of material fact as to INB's credit reporting practices. Specifically, in Count II, without actually using the terms, Nikou appears to be arguing that INB was both willful and negligent in debiting his account on a delinquent basis and in failing to correct the credit reporting records as Nikou had requested. Because

---

1. In his appellant's brief, Nikou states that an INB employee typed "Michael G. Cole and Sotorios G. Nikou" in the blank where the borrower's name is placed on the top portion of the Note. In addition, Nikou states that below his signature on the Note was printed the word "borrower." Nikou appears to argue that this somehow provides him with the rights of a borrower, requiring INB to have made the check out to both Cole and him. If this is indeed his argument, we are unpersuaded. Nikou has conceded that he was a co-maker of the Note and the designated evidence supports no other conclusion. We therefore find this argument to be without merit.

this case involves a report of a consumer's credit information to a credit reporting agency, we must examine Nikou's claim within the parameters of the Fair Credit Reporting Act (FCRA). 15 U.S.C. § 1681 *et seq.*

The purpose of the FCRA is to protect consumers from having inaccurate information concerning them circulated to lending institutions by consumer reporting agencies. 15 U.S.C. § 1681. Two subchapters under the FCRA deal with the subject of civil liability for those who violate the Act. 15 U.S.C. § 1681n states that any "consumer reporting agency" or "user of information" which willfully fails to comply with any of the requirements imposed under the FCRA with respect to any consumer is liable to that consumer in damages. 15 U.S.C. § 1681o states that any consumer reporting agency or user of information which is negligent in failing to comply with any requirement imposed under the FCRA with respect to any consumer is liable to that consumer in damages.

The FCRA defines a "consumer reporting agency" as:

> "any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports."

15 U.S.C. § 1681a(f). INB does not fall within this definition.

In addition, INB was not acting as a "user of information" when it denied Nikou credit. Although Nikou asserts otherwise in his appellant's brief, the evidence designated by Nikou fails to show that INB actually denied him credit based on a consumer report received from the credit bureau. Moreover, INB did not need a credit report to provide it information regarding delinquent payments on the Note. INB had its own internal information upon which to rely. Therefore, although INB is a user of information as a member of the credit bureau, in this instance it was not acting as a "user of information." *See* 15 U.S.C. § 1681m; *see also Alvarez Melendez v. Citibank* (D.P.R. 1988), 705 F.Supp. 67, 69 ("In relation to its business dealings with plaintiff, defendant bank was not denying credit or insurance, nor raising the rates charged to plaintiff based on a consumer report. Thus, we find that defendant bank merely furnished information regarding its credit experience with plaintiff and was not a user of consumer reports for the purpose of establishing civil liability under the FCRA.")

The evidence designated by INB shows that INB, as a member of the credit bureau, merely provided information to the credit reporting agencies as it was obligated to do. Persons who do no more than furnish information to a credit reporting agency are not covered by the FCRA. *Alvarez Melendez*, 705 F.Supp. at 69; *Mitchell v. First National Bank of Dozier*, (M.D.Ala.1981), 505 F.Supp. 176, 177–78.

The information INB provided to the credit reporting agencies was not "a consumer report" under the FCRA. The type of information INB provided the agencies is specifically excluded from the definition of "a consumer report." "The term [consumer report] does not include ... any report containing information solely as to transactions or experiences between the consumer and the person making the report...." 15 U.S.C. § 1681a(d). The definition of person includes banks. 15 U.S.C. § 1681a(b). Therefore, when a bank furnishes information based solely on its own experiences with the consumer, the information is not a consumer report and the bank is not under these circumstances a consumer reporting agency. *Alvarez Melendez*, 705 F.Supp. at 69; *Freeman v. Southern Nat. Bank* (S.D.Tex.1982), 531 F.Supp. 94, 95; *see also Rush v. Macy's New York, Inc.*, (11th Cir.1985), 775 F.2d 1554, 1557.

Nikou could have raised a genuine issue of material fact as to INB's liability if he satisfied the requirements of § 1681h(e) of the FCRA. Section 1681h(e) provides:

> "Except as provided in sections 1681n and 1681o of this title, no consumer may bring

any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or *any person who furnishes information to a consumer reporting agency,* based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, *except as to false information furnished with malice or willful intent to injure such consumer."*

15 U.S.C. § 1681h(e) (emphasis added).

■ Congress intended § 1681h(e) to provide qualified immunity from common law actions based on information provided pursuant to the provisions of the FCRA. *Alvarez Melendez, supra,* 705 F.Supp. at 70; *Freeman, supra,* 531 F.Supp. at 96. Qualified immunity for sources of information, such as INB, is the *"quid pro quo"* for full disclosure. 705 F.Supp. at 70.

■ Thus, INB has qualified immunity from Nikou's lawsuit, unless Nikou could have demonstrated that (1) INB provided false information to the credit reporting agencies, and (2) in providing such false information, INB acted with malice or willful intent to injure Nikou. 15 U.S.C. § 1681h(e).

■ In his motion for summary judgment, Nikou failed to designate any evidence to the trial court showing that INB provided false information to the credit reporting agencies and that INB, in providing such false information, acted with malice or willful intent to injure Nikou. INB, on the other hand, designated evidence to the trial court showing that it did not provide false information to the credit reporting agencies.

The evidentiary matter before the trial court established that payments under the Note ran past due throughout the collection period of August, 1990, to July 10, 1992. In fact, when Nikou consented to the deduction of monthly payments from his business checking account, the first installment on the Note was already thirty days past due. INB consistently informed Nikou by means of collection letters of the delinquent status of the payments under the Note. On the occasions when Nikou verbally authorized INB's collection officer to debit his account for payments on the loan, the payments were already delinquent by thirty or more days.

Although Nikou argues that he never authorized INB to debit his account on a delinquent basis, he failed to designate evidence showing that he attempted to bring the account up to date or that INB was otherwise obligated to do so on his behalf. Except on one occasion, which was later waived, late fees and penalties were not assessed against the account once Nikou agreed to allow INB to bring the account current and once he authorized auto-debiting of his checking account.

Therefore, the designated evidence demonstrated the truth of the information which INB provided to the local credit reporting agencies.

■ When the defendant is the moving party under T.R. 56(C), the defendant is entitled to summary judgment when it demonstrates undisputed material facts which negate at least one element of the plaintiff's claim. *Moore v. Sitzmark Corp.* (1990), Ind. App., 555 N.E.2d 1305, 1307 (quoting 3 W. Harvey, Indiana Practice § 56.9 at 629 (1988)). INB designated evidence to the trial court which negated Nikou's claim asserted in Count II of his complaint by establishing that, as a matter of law, it was protected by qualified immunity from civil liability for providing information to the credit reporting agencies.[2]

Therefore, the trial court did not err in entering summary judgment in favor of INB on Count II.

2. In his reply brief, Nikou argues that he never implicated the FCRA in any of the proceedings between the parties. Although INB asserted its compliance with the FCRA in its motion for summary judgment, it appears that Nikou is contending that the Act has no place in these proceedings unless he alleges a violation of the FCRA. Nikou cannot, however, ignore the Act because it is controlling in this instance. *See Thornton v. Equifax, Inc.* (8th Cir.1980), 619 F.2d 700, 705 ("[L]ocal law applies only to matters of practice and procedure, but substantive rights created by the Act are controlled by federal law and are not subject to 50 different rules of interpretation.") *cert. denied* (1980), 449 U.S. 835, 101 S.Ct. 108, 66 L.Ed.2d 41.

### III.

Nikou argues finally that the trial court erred in denying his cross-motion for summary judgment because INB failed to respond to Nikou's motion. In addition, Nikou argues that the trial court erred in granting INB's motion for summary judgment because INB failed to designate specific evidentiary matter in the record. We disagree with both contentions.

■ Nikou filed his motion for summary judgment three days before the scheduled September 10, 1993, hearing on INB's motion for summary judgment. Although Trial Rule 56(C) provides that an adverse party shall have thirty days after service of the motion to serve a response on the moving party, the trial court took the parties' motions under advisement on September 10, 1993. Thus, INB had no opportunity to respond to Nikou's motion beyond the extent to which the matters designated in support of its motion countered Nikou's. Therefore, this claim is without merit.

In addition, Nikou's second claim is without merit. We find that INB did designate sufficiently specific evidence to support its argument that there were no genuine issues of material fact regarding Nikou's claims and that it was therefore entitled to judgment as a matter of law.

For the reasons stated above, we affirm the judgment of the trial court.

AFFIRMED.

CHEZEM and STATON, JJ., concur.