# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**JAY T. HIRSCHAUER**
Hirschauer & Hirschauer
Logansport, Indiana

ATTORNEYS FOR APPELLEES:

**JANET A. MCSHARAR**
**ALBERT BARCLAY WONG**
Harrison & Moberly, LLP
Indianapolis, Indiana

**FILED**
Aug 15 2012, 8:45 am

**CLERK**
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| MICHAEL K. CURTS, Individually and as Personal Representative of the Estate of Dorothy J. Curts, Deceased, ) ) ) ) | |
| Appellant-Plaintiff, ) ) | |
| vs. ) ) | No. 09A02-1112-CT-1191 |
| MILLER'S HEALTH SYSTEMS, INC., a/k/a MILLER'S MERRY MANOR, LOGANSPORT, LLC, d/b/a MILLER'S MERRY MANOR, ) ) ) ) ) | |
| Appellees-Defendants. ) | |

APPEAL FROM THE CASS SUPERIOR COURT
The Honorable Thomas C. Perrone, Judge
Cause No. 09D01-0611-CT-00021

**August 15, 2012**

**OPINION - FOR PUBLICATION**

**ROBB, Chief Judge**

## Case Summary and Issues

Michael Curts, acting individually and as personal representative of the Estate of Dorothy J. Curts, brought suit against Miller's Merry Manor nursing home ("Manor"), claiming wrongful death, breach of contract, and negligent infliction of emotional distress. The trial court granted summary judgment in favor of Manor. Curts appeals, raising two issues: 1) whether Theresa Weitkamp, as a nurse and nursing home administrator, can qualify as an expert witness and offer an expert opinion as to whether Manor breached its standard of care and whether such alleged breach caused Dorothy Curts's injuries and subsequent death; and 2) whether a genuine issue of material fact exists such that summary judgment is inappropriate. Concluding nurses can potentially have sufficient expertise to qualify as experts for the purposes of medical standards of care and medical causation, but that the evidence designated does not demonstrate that Weitkamp has sufficient expertise and thus no genuine issues of material fact exist, we affirm the trial court's grant of summary judgment for Manor.

## Facts and Procedural History[1]

Dorothy Curts, an elderly woman in her eighties, was admitted to Manor. On May 7, 2006, the evidence reveals Dorothy had an accident while in Manor's care. She was taken to the local emergency room and treated, but approximately 24 hours after the incident she passed away. Dorothy's son, Michael Curts, brought suit, acting individually and as personal representative of the Estate of Dorothy J. Curts. He raised claims of wrongful death, breach

---

[1] We held oral argument in this case on July 26, 2012, at the Indiana Court of Appeals Courtroom

of contract, and negligent infliction of emotional distress. All three claims relied upon his factual assertions that Manor acted negligently in providing care for Dorothy and that such negligence caused Dorothy to fall out of her bed, hit her head, and die.

Manor moved to stay the proceedings, alleging it was a qualified health care provider that opted to be covered under the Indiana Medical Malpractice Act. A medical review panel consisting of three medical doctors convened and ultimately determined, "[t]he evidence does not support the conclusion that [Manor] failed to meet the appropriate standard of care as charged in the complaint and the conduct complained of was not a factor of the resultant damages." Appendix to Brief of Appellant at 23.

Thereafter, Manor moved for summary judgment, designating as evidence the medical review panel's decision. Curts filed a response and designated as evidence both a deposition and report letter of Theresa Weitkamp, a registered nurse and nursing home administrator, a portion of a deposition of Michael Curts, and the admission contract between Dorothy and Manor. After a hearing, the trial court granted Manor's motion for summary judgment.

In her report letter, Weitkamp summarized the clinical records relating to the care and services provided to Dorothy at Manor and at area hospitals when such medical care was necessary. Dorothy was admitted to Manor for nursing care after she suffered a stroke and made at least one trip to an emergency room. Her medical issues were varied, including weakness and contusions on her left side, fatigue, and diabetes. Dorothy had a history of falling, and her physician ordered a sensor alarm and bed and chair alarms for her room.

in Indianapolis. We thank counsel for their capable advocacy.

3

Despite this, she fell at Manor on at least one occasion prior to the incident at issue, which resulted in a fractured left hip.

Dorothy "had urinary frequency and had to be toileted often" and "was also incontinent at times." Id. at 125. Weitkamp's letter reports that Dorothy would regularly turn on her call light to obtain assistance in getting to the restroom, but such attempts were often neglected and Dorothy would either wait a lengthy period for help or try to make it to the restroom on her own. In December 2005, this resulted in staff responding to an alarm and finding Dorothy lying on the floor in her room. She was unable to move without pain, but was otherwise uninjured. She was routinely reminded to ask for assistance before getting up from her bed.

In early 2006, nurses noted occasions where Dorothy urinated every twenty to thirty minutes during the night. She began setting off her bed alarm in an effort to get assistance more quickly. In April 2006, she was found sitting next to her bed after she got up so she could "pee in the trash can." Id. at 126. Despite all of these events, Weitkamp noted that no new measures were implemented to reduce Dorothy's risk of falling.

Around 1:00 pm on May 7, 2006, a staff person responded to an alarm in Dorothy's room and found her lying face down on the floor. She had a large knot and a laceration about two centimeters long on her forehead, and she was lying in a significant amount of blood. She was taken to the emergency room within a few minutes. Doctors discovered a fractured wrist and severe fractures to her spine. Although she was considered stable, she died at 12:15 pm on May 8, 2006.

Weitkamp concluded "it is my opinion that Miller's Merry Manor . . . deviated from commonly accepted standards of care and practice as well as from OBRA regulations, federal law mandating care given in nursing homes." Id. at 122. Specifically, she states Manor breached commonly accepted standards of care by "[f]ailing to provide adequate supervision to prevent accidents," "[f]ailing to respond to alarms in a manner timely enough to prevent accidents," "[f]ailing to take measures to determine the root cause of Mrs. Curts' urinary problems," "[f]ailing to provide staff in adequate numbers to meet the needs of their residents," and "[f]ailing to provide care and services to enable residents to attain or maintain their highest practicable physical well-being." Id. Weitkamp then states, "[a]s a result, Mrs. Curts fell multiple times, finally sustaining an injury which led to her untimely death." Id.

In Curts's deposition, he states that he arrived at the nursing home just after Dorothy's May 7 accident, and that when he came into the room he saw her lying on the floor in a large puddle of blood. Similar to Weitkamp, he also commented upon Dorothy's difficulties and the nursing home's lack of sufficient personnel to care for her in his deposition.

After a hearing, the trial court granted Manor's motion for summary judgment. Curts now appeals.

## Discussion and Decision

### I. Standard of Review

On appeal from a grant of summary judgment, our standard of review is the same as that of the trial court. Cox v. Northern Indiana Pub. Serv. Co., Inc., 848 N.E.2d 690, 695 (Ind. Ct. App. 2006). We thus apply a de novo standard of review. Id. Summary judgment

5

is appropriate when the designated evidence demonstrates there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). "When the defendant is the moving party under T.R. 56(C), the defendant is entitled to summary judgment when it demonstrates undisputed material facts which negate at least one element of the plaintiff's claim." Nikou v. INB Nat'l Bank, 638 N.E.2d 448, 454 (Ind. Ct. App. 1994).

## II. Summary Judgment

Manor has met its initial burden of establishing a prima facie showing that no genuine issue of material fact exists because it included in its designated evidence the unanimous opinion of the medical review panel that "[t]he evidence does not support the conclusion that [Manor] failed to meet the appropriate standard of care as charged in the complaint and the conduct complained of was not a factor of the resultant damages." App. to Br. of Appellant at 36; see McGee v. Bonaventura, 605 N.E.2d 792, 794 (Ind. Ct. App. 1993) (stating "a unanimous opinion of the [medical review] panel that the defendant did not breach the applicable standard of care is sufficient to negate the existence of a genuine issue of material fact."). Therefore, the question we must address is whether Curts, the nonmoving party, has met his burden of establishing that a genuine issue of material fact does exist such that summary judgment is inappropriate.

Although Curts argues in passing his claim is one of negligence rather than medical malpractice, "[m]edical malpractice cases are no different from other kinds of negligence actions regarding that which must be proven." Bader v. Johnson, 732 N.E.2d 1212, 1216-17

6

(Ind. 2000). To survive the summary judgment stage, Curts is therefore required to establish the following elements: 1) Manor owed Dorothy a duty, 2) Manor breached its duty by acting below the applicable standard of care, and 3) such breach proximately caused the resulting harm. Id. at 1217. Curts argues the evidence establishes all three required elements and therefore a genuine issue of material fact exists.

## A. Nurses As Expert Witnesses

We have previously addressed whether nurses can testify as expert witnesses regarding medical causation and medical standards of care in a handful of cases, and we have generally concluded they cannot. In Nasser v. St. Vincent Hosp. & Health Servs., 926 N.E.2d 43, 44 (Ind. Ct. App. 2010), trans. denied, the plaintiff argued the hospital "committed malpractice when the nursing staff did not respond to her repeated calls for help and allowed her to deliver two eighteen-week stillborn fetuses alone in her hospital bed," and that such malpractice caused her to suffer severe emotional distress requiring medical care and medication. A medical review panel was formed, consisting of two medical doctors and one registered nurse. The doctors concluded the hospital did not fail to meet the applicable standard of care and the conduct complained of was not a factor of the resultant damages, but the nurse concluded the hospital failed to meet the standard of care and such failure was a factor of the resultant damages.

We ultimately concluded that even though nurses are qualified to serve on medical review panels pursuant to the Medical Malpractice Act,[2] the expert opinion of a medical

---

[2] Indiana Code section 34-18-2-14 defines "health care provider," and includes in its definition

7

review panel is admissible,[3] and members of medical review panels can be called to testify, Indiana Evidence Rule 702 prevents nurses from qualifying as experts regarding medical causation even where they served on the medical review panel in a case. Id. at 51-52. Because the plaintiff did not designate any evidence on the issue of causation other than the nurse's minority opinion from the review panel process, we affirmed the trial court's grant of summary judgment in favor of the hospital. Id. at 52. See also Clarian Health Partners, Inc. v. Wagler, 925 N.E.2d 388 (Ind. Ct. App. 2010) (concluding nurse's affidavit inadmissible for purposes of determining the cause of plaintiff's injuries where the plaintiff suffered leg damage and deformity after undergoing open heart surgery during which a complication arose and her femoral artery was compromised because of the "significant difference in the education, training, and authority to diagnose and treat diseases between physicians and nurses"), trans. denied; Long v. Methodist Hosp. of Indiana, Inc., 699 N.E.2d 1164 (Ind. Ct. App. 1998) (addressing whether potential missteps during open heart surgery caused a staph infection, we concluded "[b]ecause there is a significant difference in the education, training, and authority to diagnose and treat diseases between physicians and nurses, we hold that the determination of the medical cause of injuries, which is obtained through diagnosis, for purposes of offering expert testimony is beyond the scope of nurses professional expertise"

---

"registered or licensed practical nurse." Indiana Code section 34-18-10-5 states, "[e]xcept for health care providers who are health facility administrators, all health care providers in Indiana, whether in the teaching profession or otherwise, who hold a license to practice in their profession shall be available for selection as members of the medical review panel."

[3] Indiana Code section 34-18-10-23 provides: "A report of the expert opinion reached by the medical review panel is admissible as evidence in any action subsequently brought by the claimant in a court of law. However, the expert opinion is not conclusive, and either party, at the party's cost, has the right to call any

and nurses are therefore not qualified to offer expert testimony as to the medical cause of injuries), trans. denied; Stryczek v. The Methodist Hosps., 694 N.E.2d 1186 (Ind. Ct. App. 1998) (concluding nurse not qualified to testify regarding whether hospital failed to timely communicate a proper diagnosis prior to patient undergoing a course of radiation treatment or whether such alleged failure to timely communicate a proper diagnosis caused cardiac damage), trans. denied.

In the cases discussed above, the medical causation issues were rather complex. In Nasser, the question was whether the hospital's failure to respond to a patient's calls and the patient's having delivered two stillborn fetuses in her hospital bed caused her severe emotional distress such that medical care and medication were required. In Clarian Health Partners, Inc., the question was whether a complication during open heart surgery caused the patient's leg damage and deformity. Similarly, in Long, the issue was whether missteps during and/or after open heart surgery caused a staph infection. In Stryczek, the question was whether a more timely diagnosis was possible and whether the alleged untimely diagnosis caused cardiac damage. In cases such as these, having sufficient expertise to qualify as an expert witness for the purpose of opining on medical causation or medical standards of care would likely require more experience and understanding than that of even a highly-experienced nurse. However, the case before us asks whether a nursing home failed to meet its standard of care and whether injuries from Dorothy's fall caused her death approximately

---

member of the medical review panel as a witness. If called, a witness shall appear and testify."

9

twenty-four hours later. In a scenario such as this, we cannot foreclose the possibility that some nurses have sufficient expertise to qualify as an expert witness.

We conclude we are not prepared to declare a blanket rule that nurses cannot qualify as expert witnesses under Indiana Evidence Rule 702 and testify as to whether a healthcare provider breached a standard of care or whether an alleged breach caused an injury. Indiana Evidence Rule 702(a) provides "a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Just as the Rule states, we hold a nurse could qualify as an expert regarding medical standards of care and causation in some circumstances. The determinative question is whether the nurse has sufficient expertise, as provided in Rule 702(a), with the factual circumstances giving rise to the claim and the patient's injuries.

Here, Curts has not presented sufficient evidence of Weitkamp's expertise for us to conclude she qualifies as an expert concerning Manor's alleged breach of care and whether such alleged below-standard care caused Dorothy's demise. In her deposition she briefly discussed her education and work history, but there is nothing in the record indicating she regularly deals with matters of this kind, has acquired education and/or training specific to a patient like Dorothy and her needs, has expert knowledge of the governing federal regulations, has sufficient expertise to comment on the manner and cause of Dorothy's death, or anything else which could demonstrate she qualifies as an expert.

## B. Genuine Issue of Material Fact

Having concluded insufficient evidence was designated establishing Weitkamp's qualifications as an expert, we must also conclude Curts has failed to meet his burden of establishing a genuine issue of material fact. Other than a doctor's order that Dorothy's bed and chair should be equipped with sensor alarms, the record is void of any indication whether a medical doctor had issued specific orders for Dorothy's treatment and care and, if such orders were given, whether Manor's care for Dorothy adhered to those orders. Other than Weitkamp's testimony, the record is also void of evidence demonstrating Manor's alleged failure to provide proper care caused Dorothy's death. Thus, the only evidence designated concerning whether Manor breached its standard of care and whether the alleged negligent conduct caused Dorothy's fall and death is the unanimous medical review panel opinion, which conclusively states Manor did not breach its standard of care and the alleged misconduct was not a factor in the resulting injuries and death of Dorothy.

Curts's argument that common sense supports a conclusion that Manor breached its duty of care and caused Dorothy's injuries and death is unpersuasive. Merely because an elderly person falls and injures herself in a nursing home, even when it has happened before, does not establish that it was the nursing home's responsibility based upon professional medical standards to protect her from such a fall. Additionally, the fact that Dorothy fell and injured her head does not necessitate a conclusion that the fall caused her death. Dorothy was taken to a hospital and treated after she fell from her bed. The actions or inactions of paramedics or hospital staff which occurred after Dorothy's fall could have caused her

demise, or, given her age, her death could have resulted from natural causes. Curts therefore cannot rely on common sense in arguing he has established a genuine issue of material fact.

## Conclusion

While we hold it is possible for a nurse to have sufficient expertise to qualify as an expert witness under Indiana Evidence Rule 702 and opine on whether the care of certain healthcare providers fell below the requisite standard of care and whether such inadequate care caused a particular medical injury, here, Curts designated insufficient evidence to establish Weitkamp has such expertise. Curts has therefore failed to meet his burden of establishing a genuine issue of material fact, and we conclude summary judgment is appropriate for Manor and affirm the trial court.

Affirmed.

BAILEY, J., and MATHIAS, J., concur.