

FILED

May 30 2017, 10:04 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Rick A. Cory
Scott A. Danks
Danks & Danks
Evansville, Indiana

ATTORNEYS FOR APPELLEE

Shawn Swope
Michael J. DeYoung
Swope Law Offices, LLC
Schererville, Indiana

ATTORNEYS FOR INTERVENING
PARTY, SAFE AUTO INSURANCE
Brett M. Haworth
David M. Henn
Henn Haworth Cummings + Page
Greenwood, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Charles Aillones,<br>*Appellant-Plaintiff,*<br><br>v.<br><br>Glen D. Minton,<br>*Appellee-Defendant.* | May 30, 2017<br><br>Court of Appeals Case No.<br>82A01-1609-CT-2138<br><br>Appeal from the Vanderburgh<br>Superior Court<br><br>The Honorable Leslie C. Shively,<br>Judge<br><br>Trial Court Cause No.<br>82D03-1312-CT-5493 |

**Mathias, Judge.**

[1] Charles Aillones ("Aillones") filed a negligence claim against Glen Minton ("Minton"), alleging that Aillones was injured during an automobile accident

that was Minton's fault. Aillones was treated by a nurse practitioner, and during deposition, Minton's counsel objected to testimony by the nurse practitioner regarding whether Aillones's injuries were caused by the accident. Aillones then filed a motion asking the Vanderburgh Superior Court to qualify the nurse practitioner as an expert witness. The trial court denied this motion, but certified its order for interlocutory appeal on Aillones's request. This court accepted interlocutory jurisdiction to address the question of whether the trial court erred in concluding that Aillones's witness, a nurse practitioner, cannot be an expert witness. Concluding that a nurse practitioner can, under the proper circumstances, be an expert witness, we reverse.

## Facts and Procedural History

[2] On June 2, 2012, Aillones was driving his vehicle in Evansville, Indiana when he was struck from behind by a vehicle driven by Minton. Aillones was injured in the collision and received treatment from Alan Swartz ("Swartz"), a licensed nurse practitioner, for a cervical sprain and pain in his lower back.

[3] Swartz studied nursing at the University of Southern Indiana, where he received a bachelor's degree in nursing. Thereafter, he continued his studies at the University of Southern Indiana and received a master's degree to be a nurse practitioner. Swartz is licensed and board certified to practice as a nurse practitioner in both Kentucky and Indiana. As a nurse practitioner, Swartz examines and treats patients. He also interprets lab results and can prescribe certain medications and refer patients to occupational or physical therapy.

During the course of his practice, Swartz has seen more than 100 patients who have been injured in automobile accidents.

[4] Swartz first saw Aillones on June 12, 2012, when Aillones presented with neck pain, headache, and pain in the mid-back when he sat. Swartz diagnosed Aillones with a concussion and cervical sprain or spondylosis.[1] Swartz ordered a CT scan of Aillones's brain and prescribed him a muscle relaxant and ibuprofen for the pain.

[5] Swartz saw Aillones again on June 29, 2012. Aillones still complained of pain in his neck and lower back. Swartz switched Aillones from ibuprofen to naproxen for the musculoskeletal pain and referred him to a physical therapist. Swartz next saw Aillones on September 12, 2012. Aillones's condition had somewhat improved, but he still complained of pain and indicated that he preferred ibuprofen over naproxen. Aillones stated that his pain only became a problem about once a week and requested either a stronger analgesic or a referral to a pain management specialist. Swartz reviewed the lab results he had obtained and switched Aillones back on ibuprofen. He told Aillones to see him again in six months.

[6] On December 9, 2013, Aillones filed a negligence action against Minton. During discovery, Swartz was deposed on April 22, 2016, and testified that

---

[1] Specifically, Swartz explained at the deposition, "It was probably more than a sprain, but with the computer system at the time, I couldn't get the proper diagnosis, which would have been a cervical sprain. So I had to use a spondylosis in order to have the documentation in the computer at all." Appellant's App. p. 62.

Aillones's injuries and improvement were consistent with soft tissue injuries. Aillones's counsel then asked Swartz, "Based on your experience and skill and education as a nurse practitioner, do you have — have you formed an opinion as to whether or not the complaints and injuries that [were] complained of by [Aillones] were caused by a car wreck on June 2, 2012?" Swartz replied, "Well, I wasn't there to see the accident, but he was in some sort of trauma that would have caused these injuries." Appellant's App. p. 72. Aillones's counsel then asked, "Assuming we have no other forms of trauma near that date, is it your opinion, to a reasonable degree of medical probability, that the injuries and complaints of Charles Aillones were caused by the automobile accident or automobile wreck of June 2, 2012?" *Id*. Swartz answered, "I say it's consistent with a motor vehicle accident," and after another similar question, "I think it would be consistent with what was described to me from his injury that he suffered." *Id*. at 72-73. Minton's counsel objected to each of these questions based on a lack of foundation for Swartz's opinions. *Id*.

[7] On May 19, 2016, Aillones filed a motion titled, "Plaintiff's Motion for Hearing on Objection Asserted During Evidentiary Deposition and a Finding that a Nurse Practitioner Qualifies as an Expert Witness on Causation." Appellant's App. p. 26. After a response by Minton, the trial court held a hearing on Aillones's motion on July 1, 2016, at the conclusion of which the court took the matter under advisement. on July 7, 2016, the trial court entered an order denying Aillones's motion, which provided in relevant part:

> The court having conducted oral argument on the issue of
> whether a nurse practitioner is an expert witness on causation
> and having heard the argument of counsel, now rules that a nurse
> practitioner in this case would not qualify as an expert witness.
> The court relies upon *Nasser v. St. Vincent Hosp. and Health
> Services*, 926 N.E.2d 43 (Ind. Ct. App. 2010).

Appellant's App. p. 22.

[8] On August 5, 2016, Aillones filed a motion to reconsider or, in the alternative, to certify the court's ruling for interlocutory appeal. The trial court then granted Aillones's request to certify its order for interlocutory appeal. Aillones then petitioned this court to accept interlocutory jurisdiction on September 20, 2016, which we granted on October 25, 2016.

## Standard of Review

[9] We review decisions concerning the admissibility of evidence only for an abuse of discretion. *Arlton v. Schraut*, 936 N.E.2d 831, 836 (Ind. Ct. App. 2010), *trans. denied*. An abuse of discretion occurs if the trial court's decision is clearly erroneous and against the logic and effect of the facts and circumstances before the court or if its decision is without reason or is based upon impermissible considerations. *Id*. However, to the extent that the evidentiary issue depends on the construction of a rule of evidence, and not the rule's application to any particular set of facts, our review is *de novo*. *Id*.

# Discussion and Decision

[10] Aillones claims that the trial court erred by concluding that Swartz, a nurse practitioner, could not testify as an expert witness with regard to the causation of Aillones's injuries. The admission of the testimony of expert witnesses is governed by Indiana Evidence Rule 702, which provides in relevant part:

> (a) A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue.

[11] Thus, for a witness to qualify as an expert, the subject matter of the witness's testimony must be distinctly related to some scientific field, business, or profession beyond the knowledge of the average person, and the witness must have sufficient skill, knowledge, or experience in that area so that the opinion will aid the trier of fact. *Hastings v. State*, 58 N.E.3d 919, 924 (Ind. Ct. App. 2016) (*Taylor v. State*, 710 N.E.2d 921, 923 (Ind. 1999)). "'If the witness has any peculiar knowledge or experience not common to the world that renders the witness's opinion founded upon that knowledge any aid to the trier of fact, the witness may testify as an expert.'" *Id.* (quoting 13 Indiana Practice, Indiana Evidence § 702.107 (3d ed.)). As we noted in *Hastings*, Indiana courts have allowed testimony from experts who had no formal training, e.g. drug users who testified regarding the identity of drugs based on their own experience. *Id.* (citing *Clark v. State*, 6 N.E.3d 992, 998 (Ind. Ct. App. 2014)).

[12] The trial court here based its decision on the opinion of this court in *Nasser v. St. Vincent Hospital & Health Services*, 926 N.E.2d 43 (Ind. Ct. App. 2010). In that case, the plaintiff sued the hospital claiming malpractice because the nursing staff at the hospital did not respond to the plaintiff's repeated calls for help, thereby leaving the plaintiff alone to deliver two stillborn fetuses in her hospital bed. *Id.* at 44. The convened medical review panel consisted of two medical doctors and one registered nurse. *Id.* The two doctors concluded that the hospital did not fail to meet the applicable standard of care and that the conduct complained of was not a factor in the plaintiff's damages. *Id.* The nurse, however, concluded that the hospital did fail to meet the applicable standard of care and this failure was a factor of the resultant damages. *Id.*

[13] Pursuant to the applicable portions of the Medical Malpractice Act ("MMA"), the defendant hospital filed for summary judgment and, in support of its motion, submitted the opinion of the physicians comprising the majority of the medical review panel. Nasser's designated evidence in response to the hospital's motion included the opinion of the nurse who had dissented from the majority in the medical review panel. The trial court granted summary judgment in favor of the hospital, concluding that Nasser was required to counter the opinion of the medical review board with expert testimony from a physician. *Id.* at 47.

[14] On appeal, we noted that, pursuant to the MMA, nurses are qualified to serve on medical review panels, the opinion of the review panel are admissible as evidence, and members of the panel may testify. *Id.* at 51-52 (citing Ind. Code § 34-18-10-23). However, we held that Indiana Evidence Rule 702 prevents

nurses from qualifying as experts regarding medical causation, even when they served on the medical review panel. *Id.* at 52. Because Nasser had not designated any other evidence regarding causation, we affirmed the trial court's grant of summary judgment. *Id.*

[15] *Nasser* relied upon *Long v. Methodist Hospital of Indiana, Inc.*, 699 N.E.2d 1164 (Ind. Ct. App. 1998), which addressed whether a nurse could offer expert testimony as to the medical causes of injuries. The *Long* court held that because there is a significant difference in the education, training, and authority to diagnose and treat diseases between physicians and nurses, the determination of the medical cause of injuries, which is obtained through diagnosis, for purposes of offering expert testimony is beyond the scope of nurses' professional expertise. *Id.* at 1169. Therefore, the *Long* court concluded that the nurse was not qualified to offer expert testimony on the issue of whether Methodist's conduct caused the plaintiff's injuries. *Id.* Consequently, the *Long* court held that the trial court did not err in striking the nurse's affidavit as to the issue of causation.[2] *Id.*; *see also Clarian Health Partners, Inc. v. Wagler*, 925 N.E.2d 388, 398 (Ind. Ct. App. 2010) ("Based upon *Long*, we conclude that [the nurse's] affidavit was inadmissible for the purpose of creating an issue of fact regarding whether Clarian's actions were the proximate cause of Wagler's injuries."),

---

[2] *Nasser* viewed the holding in *Long* implicating Indiana Evidence Rule 702. See *Nasser*, 926 N.E.2d at 51 ("Though not the explicit basis for the *Long* court's holding, this holding implicates Indiana Evidence Rule 702."). However, *Long* makes no mention of Rule 702 and appears to have been decided without any analysis of the applicability of Rule 702. Therefore, we question whether *Long* has any applicability to an analysis under Rule 702.

*disapproved of on other grounds by Siner v. Kindred Hosp. Ltd. P'ship*, 51 N.E.3d 1184 (Ind. 2016).

[16] These cases seem to support a bright-line rule that nurses cannot testify as expert witnesses with regard to causation. However, the situation is more nuanced than these cases might suggest. First, *Nasser*, *Long*, and *Wagler* were medical malpractice cases and held that a nurse could not testify regarding as to whether a medical provider's conduct caused a patient's injuries. The present case, however, is a simple tort claim, not a medical malpractice claim; at issue here is not whether a medical provider caused a patient's injuries, but whether a plaintiff's injuries were caused by an automobile accident. Thus, *Nasser*, *Long*, and *Wagler* are not directly on point.

[17] Furthermore, this court more recently held in *Curts v. Miller's Health Systems, Inc.*, 972 N.E.2d 966 (Ind. Ct. App. 2012), the issue before the court was whether a nursing home failed to meet its standard of care and whether injuries from the decedent patient's fall caused her death approximately twenty-four hours later. After reviewing *Long* and *Nasser*, the *Curts* court wrote, "we cannot foreclose the possibility that some nurses have sufficient expertise to qualify as an expert witness." *Id*. at 971. The *Curts* court continued:

> *[W]e are not prepared to declare a blanket rule that nurses cannot qualify as expert witnesses under Indiana Evidence Rule 702 and testify as to whether a healthcare provider breached a standard of care or whether an alleged breach caused an injury.* Indiana Evidence Rule 702(a) provides "a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form

of an opinion or otherwise." Just as the Rule states, *we hold a nurse could qualify as an expert regarding medical standards of care and causation in some circumstances*. The determinative question is whether the nurse has sufficient expertise, as provided in Rule 702(a), with the factual circumstances giving rise to the claim and the patient's injuries.

*Id*. at 971 (emphases added).[3]

[18]    A similar approach was adopted by our supreme court in *Bennett v. Richmond*, 960 N.E.2d 782 (Ind. 2012), which addressed whether a psychologist (as opposed to a psychiatrist, who is also a medical doctor) could testify as an expert on behalf of a plaintiff regarding the cause of the plaintiff's brain injury. The court held that "[n]either the criteria for qualifying under Rule 702 (knowledge, skill, experience, training, or education) nor the purpose for which expert testimony is admitted (to assist the trier of fact) supports a *per se* rule banning psychologists' testimony in this manner." *Id*. at 786. The court noted that its approach differed from the *per se* exclusion rule of *Long*, *Nasser*, and *Wagler*. *Id*. at 786 n.8.

[19]    Pursuant to *Curts* and *Bennett,* we conclude no blanket rule prevents a nurse as acting as an expert witness. Instead, the pertinent question in the present case is whether Swartz has sufficient "knowledge, skill, experience, training, or

---

[3] Nevertheless, the *Curts* court held that the plaintiff did not present sufficient evidence of the nurse's expertise to support a conclusion that she qualified as an expert concerning the defendant's alleged breach of care and whether this alleged breach caused the decedent's death. *Id*.

education" and if his specialized knowledge would "help the trier of fact understand the evidence or determine a fact in issue." Evid. R. 702(a).

[20] In addressing this question, we note that Swartz is not only a registered nurse, but a nurse practitioner. The Indiana Board of Nursing, under the authority granted to it by Indiana code section 25-23-1-7.1, has defined a "nurse practitioner" as

> [A]n advanced practice nurse who provides advanced levels of nursing client care in a specialty role, who meets the requirements of an advanced practice nurse as outlined in section 3 of this rule, and who has completed any of the following:
>
> (1)      A graduate program offered by a college or university accredited by the Commission on Recognition of Postsecondary Accreditation which prepares the registered nurse to practice as a nurse practitioner and meets the requirements of section 6 of this rule.
>
> (2)      A certificate program offered by a college or university accredited by the Commission on Recognition of Postsecondary Accreditation which prepares the registered nurse to practice as a nurse practitioner and meets the requirements of section 6 of this rule. Nurse practitioners who complete a certificate program must be certified and maintain certification as a nurse practitioner by a national organization which requires a national certifying examination.

> (3) Prior to the promulgation of this article, the following:

>> (A) A formal organized program of study and clinical experience which prepares the registered nurse to practice as a nurse practitioner.

>> (B) The required program of study at a time when there was no credentialing or certification process available in the specialty area of the program of study.

848 Ind. Admin. Code 4-1-4(a).

[21] An "advanced practice nurse" such as a nurse practitioner must be

> a registered nurse qualified to practice nursing in a specialty role based upon the additional knowledge and skill gained through a formal organized program of study and clinical experience, or the equivalent as determined by the board, which does not limit but extends or expands the function of the nurse which may be initiated by the client or provider in settings that shall include hospital outpatient clinics and health maintenance organizations. . . .

I.C. § 25-23-1-1(b).

[22] Nurse practitioners "shall perform as an independent and interdependent member of the health team."[4] 848 Ind. Admin. Code § 4-2-1 (2013). This regulation further provides:

---

[4] "'Health team'" means a group of health care providers which may, in addition to health care practitioners, include the patient/client, family, and any significant others. 848 Ind. Admin. Code 2-1-3 (2013).

The following are standards for each nurse practitioner:

(1)     Assess clients by using advanced knowledge and skills to:

     *(A)     identify abnormal conditions;*

     *(B)     diagnose health problems;*

     (C)     develop and implement nursing treatment plans;

     (D)     evaluate patient outcomes; and

     (E)     collaborate with or refer to a practitioner, as defined in IC 25-23-1-19.4, in managing the plan of care.

*(2)     Use advanced knowledge and skills in teaching and guiding clients and other health team members.*

*(3)     Use appropriate critical thinking skills to make independent decisions, commensurate with the autonomy, authority, and responsibility of a nurse practitioner.*

(4)     Function within the legal boundaries of their advanced practice area and shall have and utilize knowledge of the statutes and rules governing their advanced practice area, including the following:

     (A)     State and federal drug laws and regulations.

     (B)     State and federal confidentiality laws and regulations.

(C)     State and federal medical records access laws.

(5)     Consult and collaborate with other members of the health team as appropriate to provide reasonable client care, both acute and ongoing.

(6)     Recognize the limits of individual knowledge and experience, and consult with or refer clients to other health care providers as appropriate.

(7)     Retain professional accountability for any delegated intervention, and delegate interventions only as authorized by IC 25-23-1 and this title.

(8)     Maintain current knowledge and skills in the nurse practitioner area.

(9)     Conduct an assessment of clients and families which may include health history, family history, physical examination, and evaluation of health risk factors.

*(10)     Assess normal and abnormal findings obtained from the history, physical examination, and laboratory results.*

(11)     Evaluate clients and families regarding development, coping ability, and emotional and social well-being.

*(12)     Plan, implement, and evaluate care.*

(13)     Develop individualized teaching plans with each client based on health needs.

(14)   Counsel individuals, families, and groups about health and illness and promote attention to wellness.

(15)   Participate in periodic or joint evaluations of service rendered, including, but not limited to, the following:

   (A)   Chart reviews.

   (B)   Client evaluations.

   (C)   Outcome statistics.

(16)   Conduct and apply research findings appropriate to the area of practice.

(17)   Participate, when appropriate, in the joint review of the plan of care.

848 I.A.C. § 4-2-1 (emphases added). Moreover, a nurse practitioner may prescribe legend drugs. Ind. Code § 25-23-1-7(a)(9)(B) (providing that Board of Nursing shall establish, with the approval of the medical licensing board, the requirements that an advanced practice nurse must meet to be granted authority to prescribe legend drugs); 848 I.A.C. § 5-1-1 (setting forth the requirements an advance practice nurse must meet to be authorized to prescribe legend drugs).

[23]   From this, it is apparent that a nurse practitioner is a highly trained and educated medical professional in a highly regulated field. Although a nurse practitioner obviously does not possess the same level of training and education as a licensed medical doctor, we do not believe this acts as a bar to the

*admissibility* of a nurse practitioner's expert testimony. Instead, issues regarding the comparative level of training and education would go only toward the weight to be given to such evidence. *See Bennett*, 960 N.E.2d at 790 (noting that questions regarding the adequacy of the psychologist's education and training or the propriety of his examination of the plaintiff's injuries went to the weight and credibility of the witness's testimony, not its admissibility).

[24] Here, it is undisputed that Swartz meets the qualifications to be a nurse practitioner. He has a bachelor's degree in nursing and a master's degree to be a nurse practitioner. Swartz is licensed and board certified to practice as a nurse practitioner in Indiana and Kentucky. As a nurse practitioner, Swartz examines and treats patients, interprets lab results, and can prescribe certain medications and refer patients to occupational or physical therapy. Swartz has seen more than 100 patients who have been injured in automobile accidents.

[25] We therefore conclude that Swartz has sufficient knowledge, skill, experience, training, or education to testify as an expert witness. However, Swartz may not testify that Aillones's injuries were *caused* by the accident,[5] as Swartz was not a witness to the accident. Importantly, this is not a medical malpractice case regarding a medical provider's conduct. Instead, it is a simple tort claim. Accordingly, we hold that although Swartz may not testify that Aillones's injuries were proximately *caused by* the accident, he may testify whether, in his

---

[5] Because the question is not directly before us, however, we express no opinion on whether a nurse practitioner, might be able to testify in a medical malpractice case as to medical causation.

expert opinion, Aillones's injuries were *consistent with* injuries from an automobile accident. Although this may seem a fine line to draw, it is up to Aillones's counsel to persuade the jury that the injuries that Swartz testified are consistent with an accident were actually *caused* by the accident.

## Conclusion

For these reasons, we reverse the order of the trial court which concluded that nurse Swartz could not testify as an expert witness, and we remand for proceedings consistent with this opinion.

Reversed and remanded.

Kirsch, J., and Altice, J., concur.